# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MATTHEW TELEP,                                              *

    *Plaintiff,*                                        *

v.                                                         *          Civil Case No: 1:23-cv-02379-JMC

**KARA ANNE STICKNEY** *as the Personal*
*Representative of the Estate of DANIEL*
*J. STICKNEY, Jr. et al.*,

                                        *

    *Defendants.*

   *    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Matthew Telep, filed the present lawsuit on August 30, 2023, against Kara Anne Stickney (as personal representative of the estate of Daniel J. Stickney, Jr.),[1] Stephen S. McKinney, Francis D. Peterson, Jr., the Town of Rising Sun, Maryland ("Rising Sun"), Kyle Thomas, Alexander Dowling, and Heather Cotton (collectively "Defendants") alleging various violations of the United States Constitution, the Maryland Declaration of Rights, 42 U.S.C. §§ 1983 and 1988, and Maryland common law.  (ECF No. 1).  Plaintiff then filed an Amended Complaint on March 28, 2024.  (ECF No. 39).[2]  Before the Court is Defendant McKinney's Motion for Summary

---

[1] Plaintiff's lawsuit originally named Daniel J. Stickney as a Defendant.  However, Mr. Stickney passed away on January 10, 2024, and the Court granted Plaintiff's unopposed motion to substitute Kara Anne Stickney, as personal representative of Mr. Stickney's estate, as a Defendant.  (ECF No. 31).

[2] The filing of an amended complaint may render a pending motion for summary judgment moot.  *Best v. Fed. Nat'l Mortg. Ass'n*, No. GJH-17-314, 2017 WL 6550671, at *3 n.5 (D. Md. Dec. 21, 2017).  Here, careful review of Plaintiff's Amended Complaint reveals that the only material difference between it and the original complaint is the substitution of Ms. Stickney as a defendant in this case.  *Compare* (ECF No. 39), *with* (ECF No. 39-1).  The only other modifications appear to be minor typeface corrections like paragraph numbering, but all the factual allegations and causes of action are identical.  Moreover, the motion for summary judgment is not directed at the adequacy of Plaintiff's Amended Complaint but instead focuses on the merits of the substantive claims therein.  The Court therefore construes the motion summary judgment as being lodged against the Amended Complaint and will analyze the motion on its merits rather than deny it as moot.  *See Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414–15 (D. Md.), *aff'd*, 479 F. App'x 497 (4th Cir. 2012).

Judgment (ECF No. 35).[3] The Court has considered the motion as well as the opposition and reply thereto.  (ECF Nos. 45, 46).  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, the motion for summary judgment will be denied.

## I.    BACKGROUND

### A. The Parties

Plaintiff is a retired police officer who currently resides in Rising Sun, Maryland.  (ECF No. 39 at 1).[4] At all times relevant to Plaintiff's claims: Daniel Stickney, Jr. was a police officer employed by Rising Sun and the Rising Sun Police Department ("Officer Stickney");[5] Defendant Kara Anne Stickney ("Defendant Stickney") is the personal representative of the estate of Officer Stickney following Officer Stickney's passing; Defendant McKinney was a police officer also employed by Rising Sun and the Rising Sun Police Department; Defendant Peterson Jr. was a police officer employed by Rising Sun as the Chief of Police for the Rising Run Police Department ("Chief Peterson"); Defendant Rising Sun is a municipal corporation located in Cecil County, Maryland; and Defendants Thomas, Dowling, and Cotton were deputy sheriffs employed by the Cecil County Sheriff's Department.  *Id.* at 2–3.

---

[3] Also pending before the Court is Defendant Peterson, Jr.'s and Defendant Rising Sun's Motion to Dismiss the Complaint or, in the Alternative, Motion to Bifurcate and Stay Discovery.  (ECF No. 36).  The merits of that motion will be addressed in a separate Memorandum Opinion, as that motion has not been fully briefed as of the date of this Memorandum Opinion and Order.

[4] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document.  Defendant McKinney's motion does not attack the credibility of most of the background facts leading to the incident in question, so the Court describes those facts as alleged in the Amended Complaint.  The Court will denote *infra* at what point in the history of this case that the facts become disputed as relevant to Defendant McKinney's motion.

[5] The Court will refer to Daniel Stickney Jr., as "Officer Stickney" so as to avoid confusing Officer Stickney with Ms. Kara Anne Stickney.

B.  Factual Background

On April 3, 2022, Plaintiff's then-17-year-old daughter, Jordan, attended a wedding at the Rising Sun Fire Hall ("Fire Hall").  *Id.* at 4.  Jordan attended the wedding with her boyfriend who was related to the groom.  *Id.*  Multiple fights broke out during the wedding reception at the Fire Hall, resulting in attendees calling 9-1-1.  *Id.*  Jordan allegedly suffered various personal injuries after being "violently attacked" by the bride and the bride's relatives during the fighting outbursts. *Id.*

Jordan telephoned her parents following the assault, who then drove to the Fire Hall.  *Id.* By the time Plaintiff and his wife arrived at the Fire Hall, the Defendant police officers had already arrived at the scene and were in the process of shutting down the wedding reception.  *Id.* at 4–5. Upon arriving at the scene, Plaintiff entered the Fire Hall to speak to the assailant bride while Plaintiff's wife spoke with Jordan in a nearby parking lot.  *Id.* at 5.  This involved Plaintiff walking past several deputies and police officers.  *Id.*

Plaintiff alleges (which is disputed by Defendant McKinney) that the Defendant sheriff deputies tackled Plaintiff to the ground from behind as he walked towards the bride "merely attempting to speak" with her.  *Id.*  The Rising Sun police officers then "joined in the take down" and Officer Stickney employed his taser multiple times to Plaintiff's backside.  *Id.*  Officer Stickney then arrested Plaintiff with aid from other officers, including Defendant McKinney. Officer Stickney and Defendant McKinney wore body cameras capturing most of the events at the Fire Hall, but failed to capture "the critical events leading up to the plaintiff's arrest or the arrest itself, or if they did, they deleted or caused to be deleted those portions of the body camera recordings before producing the videos" to Plaintiff's criminal defense attorneys.  *Id.*

Officer Stickney and Defendant Dowling were captured on video "bragging" about Plaintiff's arrest and "joking about plaintiff's painful reaction to the taser, giving each other fist bumps in celebration for what they had done." *Id.* Officer Stickney subsequently charged Plaintiff with second degree assault (of the bride), resisting arrest, disturbing the peace, and trespassing. *Id.* at 6. According to Plaintiff, Officer Stickney and Defendant McKinney refused to investigate the assault and battery of Jordan despite such violence being reported multiple times. *Id.* Rather, Officer Stickney and Defendant McKinney initiated criminal charges against Jordan, which Plaintiff believes to be an effort to "justify and cover-up their unlawful actions." *Id.* Plaintiff alleges that this cover-up continued in the coming weeks by convincing the local prosecutors not to pursue charges against the bride and her relatives although Plaintiff, his wife, and Jordan all filed criminal charges against the bride and her relatives. *Id.* Plaintiff avers that this is not the first instance in which Officer Stickney faced investigation/civil lawsuits for allegedly abusing his police powers and references at least nine lawsuits and one citation involving Officer Stickney's conduct as early as 2001 and as late as 2022. *Id.* at 6–8.

Jordan was eventually acquitted of all charges. *Id.* at 6. But Plaintiff remained the subject of ongoing criminal charges and, on or about August 3, 2022, the Cecil County State's Attorney put Plaintiff's criminal defense attorney(s) on notice that the State obtained confidential documents that were believed to be *Brady* material.[6] Judge Brown of the Cecil County Circuit Court then granted Plaintiff's motion to compel in that court on April 21, 2023, directing the State to produce those materials in discovery no later than April 24, 2023. *Id.* at 9. A Cecil County Assistant State's Attorney filed a motion for reconsideration that same day, arguing that the State was not in

---

[6] In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

possession of the materials, and that the materials were actually in Chief Peterson's possession. *Id.* Judge Brown denied that motion for reconsideration. *Id.*

Plaintiff's criminal trial began on May 1, 2023, before Judge Brown. *Id.* The exculpatory materials had not been produced yet, so Judge Brown took a short recess to permit the Assistant State's Attorney an opportunity to contact Chief Peterson and have him bring the *Brady* material to the courthouse. *Id.* Chief Peterson obliged by bringing roughly 782 pages of documents to Plaintiff's criminal defense attorney, which included "correspondence regarding misconduct by [Officer] Stickney, State Police internal investigation materials relating to [Officer] Stickney's use of excessive force and false police reports, and correspondence from the State's Attorney's office indicating they would not use [Officer] Stickney's testimony under any circumstances." *Id.* at 10. Believing such withholding of exculpatory evidence to be particularly prejudicial to Plaintiff's defense, Judge Brown dismissed all charges pending against Plaintiff. *Id.*

Based on the foregoing allegations, Plaintiff's lawsuit alleges that: Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from unlawful seizures (Count I); Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from the use of excessive and unreasonable force (Count II); Officer Stickney—in his individual capacity—violated Plaintiff's Fourth Amendment right to be free from malicious prosecution (Count III); Officer Stickney—in his individual capacity—violated Plaintiff's Fifth and Fourteenth Amendment rights by intentionally concealing exculpatory information (Count IV); Chief Peterson and Rising Sun violated Plaintiff's Fifth and Fourteenth Amendment rights by failing to disclosure exculpatory evidence (Count V); all Defendants violated Article 26 of the Maryland Declaration of Rights by unlawfully seizing

Plaintiff (Count VI); all Defendants violated Article 26 of the Maryland Declaration of Rights by using excessive and unreasonable force (Count VII); Officer Stickney and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by maliciously prosecuting Plaintiff (Count VIII); Officer Stickney, Chief Peterson, and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by failing to disclosure exculpatory evidence (Count IX); Officer Stickney, McKinney, Thomas, and Dowling battered Plaintiff (Count X); Officer Stickney, McKinney, Thomas, and Dowling falsely arrested Plaintiff (Count XI); Officer Stickney, McKinney, Thomas, and Dowling falsely imprisoned Plaintiff (Count XII); Officer Stickney maliciously prosecuted Plaintiff (Count XIII); and Chief Peterson and Rising Sun negligently hired and retained Officer Stickney (Count XIV).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott*

*v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

"Ordinarily, [a] district court should refuse to grant summary judgment when an opposing party needs additional time to complete discovery and properly respond to the motion." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 518 (D. Md. 2017) (internal quotation omitted). Thus, "if a nonmovant demonstrates 'by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition' to a motion for summary judgment, a court may defer considering the motion to allow the nonmovant to gather additional evidence." *Akinmeji v. Jos A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 477 (D. Md. 2019) (quoting Fed. R. Civ. P. 56(d)). Summary judgment is appropriate before the close of discovery, however, "where the nonmoving party has not demonstrated that proposed additional discovery would establish a genuine dispute of material fact." *Id.* at 478.

## III.   ANALYSIS

### A.  Counts I (unlawful seizure) and II (excessive force)

#### i.  There exist genuine disputes of material fact regarding whether Defendant McKinney violated Plaintiff's Fourth Amendment rights

Defendant McKinney seeks summary judgment in his favor regarding all counts in which he is implicated, namely Counts I, II, VI, VII, X, XI, and XII. Beginning with Count I (unlawful seizure), McKinney asserts that "non-arresting officers like Cpl. McKinney are not liable for an

alleged illegal seizure when they reasonabl[y] act to assist another officer making an arrest." (ECF No. 35-1 at 4). To that effect, Defendant McKinney avers that several sheriff's deputies were already in the process of taking Plaintiff to the ground when McKinney arrived before "assist[ing] them with his handcuffing by doing nothing more than holding one of Plaintiff's arms." *Id.* at 3.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019). "Thus, '[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues.'" *Id.* (quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001))."Probable cause is determined by a totality-of-the-circumstances approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (internal quotation omitted). This Court previously explained how these principles apply to officers assisting an arrest and officers who initiate an arrest:

> For an arresting officer, the dispositive question in a false arrest claim is probable cause.
>
> For an assisting officer, however, the inquiry is whether the officer's decision to assist was objectively reasonable in light of the circumstances and existing law. An assisting officer is not required to make an independent assessment of probable cause before assisting other officers with [a] potentially dangerous arrest that is already underway. In other words, when an assisting officer arrives late to the scene and has no personal knowledge of the arresting officer's basis for the arrest, liability does not turn on whether the arrest was actually based on probable cause.

*Fernandes v. Montgomery Cnty., Md.*, No. AW-10-CV-752, 2012 WL 1664086, at *3 (D. Md. May 10, 2012) (citing *Carter v. Jess*, 179 F. Supp. 2d 534, 544–45 (D. Md. 2001)).

The parties dispute whether Defendant McKinney is properly considered an arresting officer or a late-arriving assisting officer. Under either standard, though, there exist genuine

disputes of material fact precluding the Court from entering summary judgment in favor of Defendant McKinney on Count I under the above argument. If Defendant McKinney is considered an arresting officer, there are genuine disputes of material fact clouding whether a reasonable officer in Defendant McKinney's position would have believed that probable cause existed for Plaintiff's arrest. "Courts look to the information available to the officer on the scene at the time and apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Taylor v. Montgomery Cnty., Md.*, No. GJH-20-3143, 2021 WL 3857949, at *3 (D. Md. Aug. 30, 2021) (citing *Hupp*, 931 F.3d at 318). Here, the parties offer notably differing accounts of the events leading up to Plaintiff's arrest and consequentially dispute the information available to Defendant McKinney leading up to and during Plaintiff's arrest. Plaintiff declares that, upon arriving at the Fire Hall, he calmly entered the Fire Hall "at a normal pace," approached the bride with the intention of asking her why she assaulted Plaintiff's daughter, "was only able to get one or two words out of [his] mouth" before being tackled, and that Plaintiff never touched, threatened, or acted aggressively toward the bride. (ECF No. 45-2 at 2–3). Viewing these allegations in the light most favorable to Plaintiff at the summary judgment stage, these facts would suggest that there may have been no objectively reasonable basis to arrest Plaintiff if proven through the discovery that has yet to commence.

But Defendant McKinney offers a starkly different account of what happened. Specifically, Defendant McKinney asserts that Plaintiff attempted to pursue the bride immediately upon arriving in the Fire Hall parking lot while he "curs[ed] at her and appeared to be preparing to assault her." (ECF No. 35-2 at 3). These facts would cut the opposite way if proven through discovery by suggesting that the officers involved in Plaintiff's arrest may have had probable cause to believe that Plaintiff was about to commit a crime. It is for these same reasons that summary

judgment is inappropriate even if Defendant McKinney is considered an assisting officer. Defendant McKinney's assertions of Plaintiff's conduct upon arriving at the Fire Hall suggest that Defendant McKinney was aware of Plaintiff's presence on the scene and observed Plaintiff's conduct in some capacity.   In other words, Defendant McKinney's purported observations regarding Plaintiff's arrival and approaching the bride undercut any claim at this stage that Defendant McKinney had no personal knowledge of Plaintiff's conduct leading up to Defendant McKinney's decision to assist in handcuffing Plaintiff.   Determining whether Defendant McKinney's decision to assist was objectively reasonable thus necessarily depends on Plaintiff's conduct leading up to his arrest, *i.e.* "the circumstances" under which Defendant McKinney decided to assist in handcuffing Plaintiff.  *Fernandes*, 2012 WL 1664086, at *3.  Put simply, the Court cannot determine as a matter of law that Defendant McKinney's actions were reasonable under the circumstances given that there are genuine disputes of material fact regarding what exactly those circumstances were.

Plaintiff asserts as much in his Rule 56(d) affidavit by claiming that he should be afforded the opportunity to discover evidence supporting his account of the incident, including examining body-worn camera footage, discovery from witnesses present at the scene of the arrest that may contradict Defendant McKinney's statements, and the ability to question/depose the officers involved in Plaintiff's arrest.  (ECF No. 45-1).  This would be particularly insightful because Defendant McKinney admits that he deactivated his body camera right before the incident began.  (ECF No. 35-2 at 3).  Such evidence would likely shed light on the exact circumstances leading up to Plaintiff's arrest, which would in turn shed light on whether Defendant McKinney violated Plaintiff's Fourth Amendment rights, either as an arresting officer or an assisting officer.  In fact, Defendant McKinney faults Plaintiff for not obtaining evidence supporting Plaintiff's side of the

story yet simultaneously asks the Court to preclude discovery into those allegations.  (ECF No. 46 at 3).  The Court declines to do so for the above reasons and Defendant McKinney's motion is therefore denied to the extent that it seeks summary judgment on Count I of Plaintiff's Amended Complaint based on the above.

With respect to Count II (excessive force), Defendant McKinney submits that he can face no such liability because:

> As his affidavit makes clear, Cpl. McKinney used *no* force other than simply taking hold of Plaintiff's arm to assist with his handcuffing.  At that time, Cpl. McKinney reasonably believed that Plaintiff had attempted to assault the bride and had resisted deputies' efforts to restrain him.  No reasonable factfinder could conclude that his mere grabbing hold of Plaintiff's arm for handcuffing while assisting other officers was excessive.

(ECF No. 35-1 at 5) (emphasis in original).  "A claim that a police officer used excessive force in making an arrest, investigatory stop, or seizure of a person is 'properly analyzed under the Fourth Amendment's objective reasonableness standard."  *Dorsey v. Sokoloff*, 381 F. Supp. 3d 521, 531 (D. Md. 2019) (quoting *Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016)); *see Fernandes*, 2012 WL 1664086, at *3 ("[An excessive force] claim is analyzed under objective standards of reasonableness, meaning an officer's actions are not excessive if they are 'objectively reasonable in light of the facts and circumstances confronting [the officer].'") (quoting *Graham v. Connor*, 490 U.S. 397 (1989)).  "Courts examine three factors [under *Graham*] to determine if an officer's use of force was objectively reasonable: (1) the severity of the crime at issue, (2) the extent to which a suspect poses an immediate threat to the safety of the officers or others, and (3) the extent to which a suspect is actively resisting arrest or attempting to evade arrest by flight."  *Dorsey*, 381 F. Supp. 3d at 531 (internal quotations omitted).  "The determination is to be made from the perspective of a reasonable officer on the scene . . . based upon the information the officers

had when the conduct occurred." *McCullough v. Anne Arundel Cnty., Md.*, No. CV CCB-19-926, 2022 WL 959516, at *8 (D. Md. Mar. 30, 2022) (cleaned up).

Here, the above identified genuine disputes likewise make summary judgment inappropriate on this issue. The first factor favors Plaintiff because he was arrested for various misdemeanor, relatively non-serious crimes. *See, e.g.*, *Est. of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 417 (D. Md. 2014) (noting that trespass and disturbing the peace are "relatively minor" offenses for purposes of a *Graham* factor analysis); *Santana v. State*, No. 1146, Sept. term, 2022, 2024 WL 226590, at *9 (Md. App. Ct. Jan. 22, 2024); *Britton v. State*, 201 Md. App. 589, 600–01 (2011); (ECF No. 39 at 21, 28). Additionally, the first factor would weigh more heavily in Plaintiff's favor if the discovery he seeks supports the factual allegations in his Amended Complaint that he was committing no crime at all when he was tackled but was instead attempting to speak to the bride in a non-threatening manner. *See Dorsey*, 381 F. Supp. 3d at 531 ("When the subject of a seizure has not committed any crime, this factor weighs heavily in [the subject's] favor.") (internal quotation omitted).

The second *Graham* factor also favors Plaintiff. Viewing the factual allegations and disputed facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Plaintiff did not pose an immediate threat to the safety of the officers or others. According to Plaintiff's disputed version of the incident, Plaintiff merely approached the bride in a non-threatening fashion before being tased from behind without provocation, which would support that Plaintiff posed no immediate danger to either the bride or the officers that subsequently arrested Plaintiff given his normal demeanor. There is also no indication that Plaintiff was armed or otherwise dangerous except for Defendant McKinney's competing assertions that Plaintiff approached the bride in an aggressive, threatening manner. Such factual disputes "bear[] directly

on [Defendant McKinney's] understanding of [Plaintiff's] possible threat level." *McCullough*, 2022 WL 959516, at *9. The second *Graham* factor further weighs in favor of Plaintiff given his representations that he knew Defendant McKinney and Officer Stickney for years prior to the incident from his career as a police officer, undercutting any assertion that either officer had reason to believe that Plaintiff would respond to them with hostility. *See Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) ("The second *Graham* factor likewise weighs in favor of [plaintiff], as Defendants had no reason to believe that [plaintiff] would react violently or incite a riot if confronted by officers.").

There also exist genuine disputes regarding the third *Graham* factor. Defendant McKinney claims that Plaintiff aggressively approached the bride in preparation to assault her before trying to break free from officers, resulting in the officers taking down Plaintiff and subsequently arresting him. (ECF No. 35-2 at 2–4). But Plaintiff maintains that he was tackled from behind without warning, that there were no attempts to de-escalate the situation prior to being tackled and tased, and that Plaintiff neither resisted arrest nor was able to resist his arrest because he was "unable to control [his] body and [he] could not move [his] arms or legs" after being tased at least twice. (ECF No. 45-2 at 2–3). Plaintiff argues that he could not and did not resist his arrest while Defendant McKinney claims that Plaintiff did, in fact, resist arrest. Such he-said, she-said evidence does not warrant entering summary judgment on this issue, particularly considering that the other *Graham* factors at best weigh in favor of Plaintiff and at worst are murky as applied to the competing accounts of Plaintiff's arrest. The Court likewise concludes that a reasonable jury could find that grabbing Plaintiff's arm during the handcuffing was excessive considering the potential unlawfulness of the underlying arrest and the disputed evidence thus far regarding whether Plaintiff posed an immediate danger and/or resisted arrest when viewing that evidence in

13

the light most favorable to Plaintiff.[7] Accordingly, Defendant McKinney's motion is denied to the extent that it seeks judgment regarding the merits of Count II.

> ii.  *Defendant McKinney is not entitled to qualified immunity regarding Counts I and II at this time*

Defendant McKinney further argues that summary judgment is appropriate in his favor regarding Counts I and II because he is entitled to qualified immunity.  (ECF No. 35-1 at 5–8). Although the Court noted above that it is premature to resolve the merits of Plaintiff's Fourth Amendment claims against Defendant McKinney, "immunity issues should be resolved at the earliest possible stage in litigation.  Thus, 'unless the plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'"  *Schultz v. Braga*, 290 F. Supp. 2d 637, 647 (D. Md. 2003); *Taft v. Vines*, 70 F.3d 304, 310–11, 316–17 (4th Cir. 1995), *reh'g en banc granted, opinion vacated* (Jan. 4, 1995), *on reh'g en banc*, 83 F.3d 681 (4th Cir. 1996).[8]

"Qualified immunity protects all governmental officials except those who violate a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'"  *Smith*, 634 F. App'x at 916 (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)).  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  *Carroll*, 574 U.S. at 16 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "Courts apply a two-step test in determining whether a

---

[7] To the extent that Defendant McKinney argues that simply holding Plaintiff's arm and assisting with his handcuffing was not sufficiently excessive to violate the Fourth Amendment, the Fourth Circuit has clarified that a defendant police officer's conduct may nevertheless constitute excessive force even where the unnecessary conduct results in "de minimis injuries" to the plaintiff.  *See Smith*, 634 F. App'x at 917–18.

[8] The Fourth Circuit's subsequent decision did not rebut the proposition that "Because qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged."  *Taft*, 70 F.3d at 310–11.  Rather, the Fourth Circuit concluded that it improperly initially rejected the officers' qualified immunity argument.  *Taft v. Vines*, 83 F.3d 681, 684 (4th Cir. 1996).

police officer is entitled to qualified immunity, inquiring, first, whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right, and second, if the first prong is satisfied, whether the right at issue was clearly established at the time of the officer's conduct." *Dorsey*, 381 F. Supp. 3d at 530 (internal quotations omitted). "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, the court generally adopts 'the plaintiff's version of the facts.'" *Id.* (quoting *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011)). "Only one of the questions has to be resolved in favor of the defendant" for qualified immunity to apply. *Moore v. Peitzmeier*, No. CV TDC-18-2151, 2020 WL 94467, at *10 (D. Md. Jan. 7, 2020). "Accordingly, even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Swagler v. Sheridan*, 837 F. Supp. 2d 509, 534–35 (D. Md. 2011).

The Court already explained how—in light of Plaintiff's version of the facts—there is a genuine dispute of material fact as to whether Defendant McKinney violated Plaintiff's Fourth Amendment rights to be free from false arrest and/or excessive force, and that, in the light most favorable to Plaintiff, Plaintiff's version would establish such violations if proven. The Court thus turns to the second prong. Here, the Court concludes that the rights at issue were clearly established at the time of Defendant McKinney's conduct. "A right is clearly established if it would be clear to a reasonable officer that the alleged conduct is unlawful." *Dorsey*, 381 F. Supp. 3d at 533. "To determine whether a right is clearly established, we assess whether the law has

been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." *Id.*  Although a "case directly on point for a right to be clearly established" is not necessary to deny an officer qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)).  The Supreme Court "has repeatedly told courts" "not to define clearly established law at a high level of generality." *Id.* (internal quotations omitted).  "Specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.*; *see also Schultz*, 290 F. Supp. 2d at 648 ("Thus, qualified immunity protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines.") (internal quotations omitted).

Plaintiff correctly identifies that "there is controlling precedent holding that assaulting an unarmed, subdued suspect or arrestee violates the Fourth Amendment." *Moore*, 2020 WL 94467, at *11.  Specifically, the Fourth Circuit concluded in *Kane v. Hargis* that a police officer's decision to exert additional physical force on an already secured, unarmed citizen that no longer posed any potential threat violated that citizen's Fourth Amendment rights.  987 F.2d 1005, 1008 (4th Cir. 1993).  The Fourth Circuit likewise explained in *Jones v. Buchanan* how police officers violated an individual's Fourth Amendment rights when they used unnecessary additional force against an already subdued individual "who posed no threat to the officer or others and had neither committed, nor was suspected of committing, any crime."  325 F.3d 520, 534 (4th Cir. 2003).  To be clear, the alleged excessive force in both cases was more severe than what Plaintiff faults Defendant McKinney for.  However, both cases nevertheless make clear that an officer's additional

16

use of unnecessary force against an already subdued, unarmed individual constitutes a clear Fourth Amendment violation.  The Fourth Circuit in *Jones* also provided several citations to cases in other Circuits in which officers were denied qualified immunity for exerting unnecessary, additional force against an already neutralized individual, even where the individual suffered no serious or permanent injury.  *See id.* at 533–34 (collecting cases); *Smith*, 634 F. App'x at 617–18 (explaining in the context of whether an officer is entitled to qualified immunity for alleged Fourth Amendment excessive force violations that there is no support for the proposition that "suffering only de minimis injuries bars one from asserting a Fourth Amendment excessive force claim").

Adopting Plaintiff's version of the facts thus far without the benefit of additional discovery suggests that Plaintiff had already been tackled and subdued by at least two officers (Defendant McKinney even represents that three sheriff's deputies had restrained and took Plaintiff to the ground, *see* ECF No. 35-1 at 8) and tased twice from behind rendering Plaintiff unable to move his body before Defendant McKinney intervened to exert allegedly unnecessary force against Plaintiff.  Moreover, if Plaintiff's account of the story proves correct that there could be no objectively reasonable probable cause supporting his arrest, then arresting Plaintiff without probable cause—and the facilitation thereof—would violate the "clearly established Fourth Amendment right to be arrested only upon probable cause."  *Hupp*, 931 F.3d at 307.  Accordingly, the Court cannot conclude at this time as a matter of law that Defendant McKinney is entitled to qualified immunity regarding Counts I and II.

B. <u>Counts X (battery), VI (unlawful seizure under the Maryland Declaration of Rights), and VII (excessive force under the Maryland Declaration of Rights)</u>[9]

Defendant McKinney next argues that he may not be held liable for battery as a matter of law because "contact incident to an arrest cannot form the basis of a claim for battery."  (ECF No. 35-1) (citing *French v. Hines*, 182 Md. App. 201, 265–66 (2008)).  Maryland law defines battery as "the intentional touching of a person without that person's consent.  Touching includes the intentional putting into motion of anything that touches another person, or that touches something that is connected with, or in contact with, another person."  *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 504 (2017) (citing Maryland Pattern Jury Instructions § 15:2 (5th ed. 2017)).  In the context of a police officer's potential liability for battery when arresting or assisting in arresting an individual, "the legal justification for an arrest indirectly controls whether an assault or battery has occurred."  *French*, 182 Md. App. at 265.  Recognizing that almost every arrest involves some degree of non-consensual touching, "the privilege that a law enforcement officer possesses to commit a battery in the course of a legally justified arrest extends only to the use of reasonable force, not excessive force.  To the extent that the officer uses excessive force in effectuating an arrest, the privilege is lost."  *Id.*

Defendant McKinney's argument in support of his above proposition is that "he is not liable for common law battery by grabbing hold of Plaintiff's arm to assist with his handcuffing by other officers for all of the reasons stated above"—referring to Defendant McKinney's arguments regarding the merits of Counts I and II against him.  (ECF No. 35-1 at 9).  Notably, "the

---

[9] *See Hicks v. Anne Arundel Cnty.*, No. CV JKB-20-00022, 2021 WL 4804017, at *4 (D. Md. Oct. 14, 2021) ("Because [] qualified immunity does not apply to Maryland constitutional claims or intentional torts, [defendant] is not entitled to qualified immunity on [plaintiff's] Maryland Declaration of Rights, false arrest, false imprisonment, and malicious prosecution claims . . . [C]ommon law qualified immunity has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called intentional torts.") (internal quotations omitted).

principle of reasonableness announced in *Graham* is the appropriate one to apply to excessive force claims brought under Article 26 and for common law claims of battery in an excessive force suit." *Randall v. Peaco*, 175 Md. App. 320, 332 (2007).  Thus, the Court's conclusion that genuine disputes of material fact exist regarding the merits of Plaintiff's unlawful seizure and excessive force claims likewise preclude summary judgment on the merits of Plaintiff's battery claim.

Defendant McKinney further asserts that "For all the same reasons that summary judgment in favor of Cpl. McKinney is appropriate for battery, so too is summary judgment appropriate in favor of him for the state constitutional claim." (ECF No. 35-1 at 9).  The Court therefore declines to grant summary judgment in favor of Defendant McKinney with regard to Counts VI and VII. Moreover, Defendant McKinney correctly identifies that "state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to . . . Fourth Amendment claim[s]." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 631 n.5 (4th Cir. 2007); *Smith v. Bortner*, 193 Md. App. 534, 544 (2010).  Accordingly, the Court further declines to grant summary judgment in favor of Defendant McKinney on Counts VI and VII given the above findings that there exist genuine disputes of material fact regarding whether Defendant McKinney violated Plaintiff's Fourth Amendment rights.

### C.   Counts XI (false arrest) and XII (false imprisonment)

Finally, Defendant McKinney seeks summary judgment in his favor regarding Counts XI (false arrest) and XII (false imprisonment). (ECF No. 35-1 at 9–10).  "Under Maryland common law, false arrest and false imprisonment are intentional torts." *Dett v. State*, 161 Md. App. 429, 441 (2005).  "The torts are separate causes of action that share the same elements . . . 1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal justification." *Id.* (internal quotations omitted).  "[A] police officer carrying out either an arrest under warrant or

a warrantless arrest is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances." *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995).  Moreover, "only the arresting officer may be liable for false arrest." *Sesay v. Woolsey*, No. 8:18-CV-01924-PWG, 2019 WL 859782, at *5 (D. Md. Feb. 21, 2019) (citing *Humbert v. O'Malley*, No. WDQ-11-0440, 2014 WL 1266673, at *15 n.51 (D. Md. Mar. 25, 2014)).

Defendant McKinney believes he may not be found liable for false arrest because he did not initiate Plaintiff's arrest, but instead assisted in Plaintiff's arrest after Plaintiff was already being restrained.  (ECF No. 46 at 6).  Both parties identify that "the common law tort of false arrest contemplates that the defendant, through threats or actions, must *create* a 'present restraint of liberty.'"  *Green v. Brooks*, 125 Md. App. 349, 371 (1999) (quoting *Davis v. DiPino*, 121 Md. App. 28, 82 (1998)) (emphasis added).  However, the Court is not persuaded by Defendant McKinney's argument that his actions were simply a continuation of restraint.  While it is true that Defendant McKinney—according to the undisputed facts thus far—did not make the initial determination to arrest Plaintiff and did not initiate Plaintiff's arrest, Defendant McKinney's holding of Plaintiff's arm can properly be considered as the creation of an *additional* restraint on Plaintiff's liberty, particularly if Plaintiff was not resisting arrest as he suggests.  Defendant McKinney was not required to create *the* restraint of liberty that Plaintiff initially experienced, but rather *a* restraint of liberty.  And although Defendant McKinney provides a citation to persuasive authority supporting his position, the Court has likewise found persuasive authority holding directly otherwise.  *Compare, e.g.*, *Hayes v. Dep't of Pub. Safety & Corr.*, No. CV 1:16-00153, 2017 WL 5184430, at *4 (W.D. La. Nov. 7, 2017) (granting summary judgment on false arrest claim where defendant officer only handcuffed plaintiff), *with Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 944 (N.D. Ill. 2014) ("Accordingly, we cannot grant summary judgment in favor of these

20

Defendant officers who were personally responsible for ordering the arrests of, arresting, *or assisting with the arrests* of these respective Plaintiffs.") (emphasis added); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *and Abascal v. Cnty. of L.A.*, No. 223CV05246HDVJCX, 2024 WL 1135177, at *3 (C.D. Cal. Jan. 26, 2024).

Defendant McKinney similarly argues that he is entitled to judgment on Plaintiff's false imprisonment claim because "to be liable [pursuant to *Montgomery v. Ward*], the person must be one who wrongfully instigated the arrest, and in this case, there is no allegation that Cpl. McKinney did so, and his Affidavit makes clear that he did nothing more than assist other officers." (ECF No. 35-1 at 10). However, the court's discussion in *Montgomery* which Defendant McKinney relies upon was in the specific context of "a private party who instigated the allegedly wrongful arrest" and "wrongfully procures another's arrest without probable cause," which is inapplicable here. 339 Md. at 721–22. The inquiry then becomes whether Defendant McKinney's conduct was supported by "legal justification," which the Court has already determined is inappropriate to decide as a matter of law at this juncture. *Dett*, 161 Md. App. at 441. Accordingly, Defendant McKinney's motion is denied to the extent that it seeks judgment as a matter of law regarding Counts XI and XII of Plaintiff's Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendant McKinney's Motion for Summary Judgment (ECF No. 35) is denied without prejudice to Defendant McKinney to file another motion for summary judgment after adequate discovery is developed (which will be governed by a scheduling order that will issue following resolution of all pending preliminary dispositive motions). Defendant McKinney shall file an answer to those remaining allegations against him within twenty-one (21) days from the date of this Memorandum Opinion and Order.

Date: <u>May 3, 2024</u>                                        <u>      /s/            </u>
                                                      J. Mark Coulson
                                                      United States Magistrate Judge