## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**MATTHEW TELEP,**                         *

    *Plaintiff,*                         *

    v.                         *          Civil Case No: 1:23-cv-02379-JMC

**KARA ANNE STICKNEY** *as the Personal*
*Representative of the Estate of DANIEL*
*J. STICKNEY, Jr. et al.*,
                                   *

    *Defendants.*

   *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Plaintiff, Matthew Telep, filed the present lawsuit on August 30, 2023, against Kara Anne Stickney (as personal representative of the estate of Daniel J. Stickney, Jr.),[1] Stephen S. McKinney, Francis D. Peterson, Jr., the Town of Rising Sun, Maryland ("Rising Sun"), Kyle Thomas, Alexander Dowling, and Heather Cotton (collectively "Defendants") alleging various violations of the United States Constitution, the Maryland Declaration of Rights, 42 U.S.C. §§ 1983 and 1988, and Maryland common law. (ECF No. 1). Plaintiff then filed an Amended Complaint on March 28, 2024. (ECF No. 39).[2] Before the Court is Defendant Peterson Jr.'s and Defendant

---

[1] Plaintiff's lawsuit originally named Daniel J. Stickney as a Defendant. However, Mr. Stickney passed away on January 10, 2024, and the Court granted Plaintiff's unopposed motion to substitute Kara Anne Stickney, as personal representative of Mr. Stickney's estate, as a Defendant. (ECF No. 31).

[2] "The filing of an Amended Complaint typically renders moot pending motions to dismiss the original complaint." *Howard v. Ocwen Loan Servicing, Inc.*, No. CV RDB-18-3296, 2019 WL 4750333, at *2 (D. Md. Sept. 30, 2019). "If the deficiencies raised in the motion to dismiss the first [] complaint remain in the [] amended complaint, however, the Court may consider the motion as addressing the [] amended complaint." *Johnson v. Asset Acceptance, LLC*, No. CV GLR-15-538, 2015 WL 8760737, at *1 (D. Md. Dec. 15, 2015) (citing *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 415 (D. Md. 2012)). Here, careful review of Plaintiff's Amended Complaint reveals that the only material difference between it and the original complaint is the substitution of Ms. Stickney as a defendant in this case. *Compare* (ECF No. 39), *with* (ECF No. 39-1). The only other modifications appear to be minor typeface corrections like paragraph numbering, but all the factual allegations and causes of action are identical. The Court therefore construes the motion to dismiss as being lodged against the Amended Complaint and will analyze it on its merits rather than deny it as moot.

Rising Sun's joint Partial Motion to Dismiss the Complaint or, in the Alternative, Motion to Bifurcate and Stay Discovery (ECF No. 36).  The Court has considered the motion as well as the opposition and reply thereto.  (ECF Nos. 48, 52).  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons that follow, the motion will be granted in part and denied in part.

## I.   BACKGROUND

### A. The Parties

Plaintiff is a retired police officer who currently resides in Rising Sun, Maryland.  (ECF No. 39 at 1).[3]  At all times relevant to Plaintiff's claims: Daniel Stickney, Jr. was a police officer employed by Rising Sun and the Rising Sun Police Department ("Officer Stickney");[4] Defendant Kara Anne Stickney ("Defendant Stickney") is the personal representative of the estate of Officer Stickney following Officer Stickney's passing; Defendant McKinney was a police officer also employed by Rising Sun and the Rising Sun Police Department; Defendant Peterson Jr. was employed by Rising Sun as the Chief of Police for the Rising Run Police Department ("Chief Peterson"); Defendant Rising Sun is a municipal corporation located in Cecil County, Maryland; and Defendants Thomas, Dowling, and Cotton were deputy sheriffs employed by the Cecil County Sheriff's Department.  *Id.* at 2–3.

### B. Factual Background

On April 3, 2022, Plaintiff's then-17-year-old daughter, Jordan, attended a wedding at the Rising Sun Fire Hall ("Fire Hall").  *Id.* at 4.  Jordan attended the wedding with her boyfriend who was related to the groom.  *Id.*  Multiple fights broke out during the wedding reception at the Fire

---

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of every electronically filed document.  At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff."  *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

[4] The Court will refer to Daniel Stickney Jr., as "Officer Stickney" so as to avoid confusing Officer Stickney with Ms. Kara Anne Stickney.

Hall, resulting in attendees calling 9-1-1.  *Id.*  Jordan allegedly suffered various personal injuries after being "violently attacked" by the bride and the bride's relatives during the fighting outbursts. *Id.*

Jordan telephoned her parents following the assault, who then drove to the Fire Hall.  *Id.* By the time Plaintiff and his wife arrived at the Fire Hall, the Defendant police officers had already arrived at the scene and were in the process of shutting down the wedding reception.  *Id.* at 4–5. Upon arriving at the scene, Plaintiff entered the Fire Hall to speak to the assailant bride while Plaintiff's wife spoke with Jordan in a nearby parking lot.  *Id.* at 5.  This involved Plaintiff walking past several deputies and police officers.  *Id.*

The Defendant sheriff deputies tackled Plaintiff to the ground from behind as he walked towards the bride "merely attempting to speak" with her.  *Id.*  The Rising Sun police officers then "joined in the take down" and Officer Stickney employed his taser multiple times to Plaintiff's backside.  *Id.*  Officer Stickney then arrested Plaintiff.  Officer Stickney and Defendant McKinney wore body cameras capturing most of the events at the Fire Hall but failed to capture "the critical events leading up to the plaintiff's arrest or the arrest itself, or if they did, they deleted or caused to be deleted those portions of the body camera recordings before producing the videos" to Plaintiff's criminal defense attorneys.  *Id.*

Officer Stickney and Defendant Dowling were captured on video "bragging" about Plaintiff's arrest and "joking about plaintiff's painful reaction to the taser, giving each other fist bumps in celebration for what they had done."  *Id.*  Officer Stickney subsequently arrested Plaintiff with second degree assault (of the bride), resisting arrest, disturbing the peace, and trespassing. *Id.* at 6.  According to Plaintiff, Officer Stickney and Defendant McKinney refused to investigate the assault and battery of Jordan despite such violence being reported multiple times.  *Id.*  Rather,

3

Officer Stickney and Defendant McKinney initiated criminal charges against Jordan, which Plaintiff believes to be an effort to "justify and cover-up their unlawful actions." *Id.* Plaintiff alleges that this cover-up continued in the coming weeks by convincing the local prosecutors not to pursue charges against the bride and her relatives although Plaintiff, his wife, and Jordan all filed criminal charges against the bride and her relatives. *Id.* Plaintiff avers that this is not the first instance in which Officer Stickney faced investigation/civil lawsuits for allegedly abusing his police powers and provides citations to at least nine lawsuits and one citation involving Officer Stickney's conduct as early as 2001 and as late as 2022. *Id.* at 6–8.

Jordan was eventually acquitted of all charges. *Id.* at 6. But Plaintiff remained the subject of ongoing criminal charges and, on or about August 3, 2022, the Cecil County State's Attorney put Plaintiff's criminal defense attorney(s) on notice that the State obtained confidential documents that were believed to be *Brady* material.[5] Judge Brown of the Cecil County Circuit Court then granted Plaintiff's motion to compel in that court on April 21, 2023, directing the State to produce those materials in discovery no later than April 24, 2023. *Id.* at 9. A Cecil County Assistant State's Attorney filed a motion for reconsideration that same day, arguing that the State was not in possession of the materials, and that the materials were actually in Chief Peterson's possession. *Id.* Judge Brown denied that motion for reconsideration. *Id.*

Plaintiff's criminal trial began on May 1, 2023, before Judge Brown. *Id.* The exculpatory materials had not been produced yet, so Judge Brown took a short recess to permit the Assistant State's Attorney an opportunity to contact Chief Peterson and have him bring the *Brady* material to the courthouse. *Id.* Chief Peterson obliged by bringing roughly 782 pages of documents to

---

[5] In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

Plaintiff's criminal defense attorney, which included "correspondence regarding misconduct by [Officer] Stickney, State Police internal investigation materials relating to [Officer] Stickney's use of excessive force and false police reports, and correspondence from the State's Attorney's office indicating they would not use [Officer] Stickney's testimony under any circumstances." *Id.* at 10. Judge Brown dismissed all charges pending against Plaintiff shortly thereafter. *Id.*

Based on the foregoing allegations, Plaintiff's lawsuit alleges that: Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from unlawful seizures (Count I); Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from the use of excessive and unreasonable force (Count II); Officer Stickney—in his individual capacity—violated Plaintiff's Fourth Amendment right to be free from malicious prosecution (Count III); Officer Stickney—in his individual capacity—violated Plaintiff's Fifth and Fourteenth Amendment rights by intentionally concealing exculpatory information (Count IV); Chief Peterson and Rising Sun violated Plaintiff's Fifth and Fourteenth Amendment rights by failing to disclosure exculpatory evidence (Count V); all Defendants violated Article 26 of the Maryland Declaration of Rights by unlawfully seizing Plaintiff (Count VI); all Defendants violated Article 26 of the Maryland Declaration of Rights by using excessive and unreasonable force (Count VII); Officer Stickney and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by maliciously prosecuting Plaintiff (Count VIII); Officer Stickney, Chief Peterson, and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by failing to disclosure exculpatory evidence (Count IX); Officer Stickney, McKinney, Thomas, and Dowling battered Plaintiff (Count X); Officer Stickney, McKinney, Thomas, and Dowling falsely arrested Plaintiff (Count XI); Officer Stickney,

McKinney, Thomas, and Dowling falsely imprisoned Plaintiff (Count XII); Officer Stickney maliciously prosecuted Plaintiff (Count XIII); and Chief Peterson and Rising Sun negligently hired and retained Officer Stickney (Count XIV).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (other

citation omitted).  However, "the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'"  *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).  "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Reamer*, 556 F. Supp. 3d at 59 (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

    B.  Motion to Bifurcate

 "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  "Rule 42(b) is disjunctive, meaning [o]nly one of these criteria need be met to justify bifurcation."  *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 458 (D. Md. 2020) (internal quotation omitted).  "District courts have 'broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused.'"  *Id.* (quoting *Beasley v. Kelly*, No. DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)); *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 974 (4th Cir. 2020) (noting that a district court's decision to bifurcate is reviewed under an "abuse of discretion" standard).

### III.    ANALYSIS

A. <u>Counts I-IV may not be pursued against those named Defendants in their official capacities, but Plaintiff does not attempt to do so</u>

Defendants Chief Peterson and Rising Sun argue first that "Plaintiff has improperly pleaded Counts I-III, which allege a variety of Fourth and Fourteenth Amendment violations, against Officer Stickney and Officer McKinney in their official capacities." (ECF No. 36-1 at 11). Moreover, both Defendants claim that Plaintiff "also improperly pleaded Counts IV and V, which allege violations of the Fifth and Fourteenth Amendments, against Officer Stickney (IV) and Chief Peterson (Count V) in their official capacities." *Id.* "Lawsuits against state officials in their official capacities [] are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022). "A suit against the state is not a suit against a 'person' as required for a § 1983 claim" and is therefore barred unless the § 1983 claim seeks "prospective injunctive relief against state officials acting in violation of federal law." *Id.* at 168 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Counts I-V are raised against state officials but do not seek injunctive relief, so any suit against those Defendants in their official capacities is improper. However, Plaintiff alleges in Counts I–V—both in the original and amended complaint—that those Counts are against those named Defendants "in their personal capacities." (ECF No. 1 at 21–25; ECF No. 39 at 20–24). Defendants' motion to dismiss on these grounds is therefore denied as moot regarding Counts I-V.

8

B. <u>Count V must be dismissed because Plaintiff does not plausibly allege that Defendants engaged in underlying unconstitutional conduct, which also makes any corresponding *Monell* claim subject to dismissal</u>

Defendants also argue that Count V should be dismissed to the extent that it asserts a *Monell* claim because Count V is not specifically named as a *Monell* claim and thus Plaintiff has not sufficiently put Defendants on notice of such a claim. (ECF No. 36-1 at 17–18). The Court rejects this argument considering that Defendants self-identified that Count V purports to assert a *Monell* claim before arguing in detail that Plaintiff failed to properly plead a *Monell* claim. Defendants then challenge whether Plaintiff's *Monell* claim is adequately pled.

"In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 [] (1978), the Supreme Court explained that a municipality is subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights." *Johnson*, 500 F. Supp. 3d at 459. "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). "[A] viable § 1983 *Monell* claim" therefore "consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson*, 500 F. Supp. 3d at 459.

"All *Monell* claims must (1) identify the specific policy or custom; (2) fairly attribute the policy and fault for its creation to the municipality; and (3) find the necessary affirmative link between [the] identified policy or custom and the specific violation." *Jarrells v. Anne Arundel Cnty.*, No. CV GLR-21-2902, 2022 WL 3975173, at *5 (D. Md. Sept. 1, 2022) (cleaned up). "A

municipality may be held liable for four types of policies or customs: (1) 'the decisions of a government's lawmakers,' (2) 'the acts of its policymaking officials,' (3) 'a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights,' or (4) 'practices so persistent and widespread as to practically have the force of law.'" *Id.* at *6 (quoting *Connick v. Thompson*, 563 U.S. 41, 61 (2011)). Valid *Monell* claims must plausibly allege that "the municipality had an unconstitutional policy or custom" giving rise to "a violation of the plaintiff's constitutional rights." *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 750 (D. Md. 2023).

The policy explicitly referenced in Count V supporting Plaintiff's purported *Monell* claim is "Policy 605," which Plaintiff contends is "an official written policy for the identification and release of potentially exculpatory or impeachment information to a prosecuting attorney." (ECF No. 39 at 25).[6] Plaintiff does not contend that Policy 605 is unconstitutional. Rather, Plaintiff's *Monell* claim appears to be premised on the assertion that Chief Peterson's violation of that policy during Plaintiff's criminal trial constitutes an unconstitutional policy or practice attributable to both Defendants that violated Plaintiff's constitutional right to be presented with exculpatory evidence.

Both parties dispute whether isolated or sporadic instances of misconduct may sufficiently establish a policy or custom under *Monell* under various circumstances. However, the Court need not address this argument because there is no plausible underlying unconstitutional conduct even assuming *arguendo* that the conduct at issue here established a policy or custom under *Monell*.

---

[6] According to Defendants' motion, Policy 605 provides that: "The Rising Sun Police Department will conduct fair and impartial criminal investigations and will provide the prosecution with both incriminating and exculpatory evidence, as well as information that may adversely affect the credibility of a witness. In addition to reporting all evidence of guilt, the Rising Sun Police Department will assist the prosecution by complying with its own obligation to disclose information that is both favorable and material to the defense. The Department will identify and disclose to the prosecution potentially exculpatory information, as provided in this policy." (ECF No. 36-1 at 19).

Even if Count V sufficiently alleged a basis for *Monell* liability based on Chief Peterson's actions in this single case, Count V must nevertheless be dismissed when analyzing Defendants' argument that Count V fails to plausibly allege a § 1983 *Brady*-based withholding claim.  (ECF No. 36-1 at 12–16).   Even where a purported municipal policymaker's conduct falls under *Monell*'s scope, a plaintiff's *Monell* claim must still fail if the complaint does not plausibly allege the underlying claim supporting *Monell* liability.  *See, e.g.*, *Gaines*, 657 F. Supp. 3d at 754 (dismissing § 1983 *Monell* claim because plaintiff failed to plausibly state a claim for relief regarding the allegedly unlawful conduct underlying the *Monell* claim); *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986) (explaining that "it is inconceivable" for a municipality to be liable under § 1983 where the municipality's actors "inflicted no constitutional injury on respondent"); *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 297–98 (E.D.N.Y. 2013) ("When, as here, however, there is no underlying constitutional violation, there can be no municipal liability [under § 1983].") (citing *Heller*); *White v. Detroit, City of*, 569 F. Supp. 3d 650, 658 (E.D. Mich. 2021), *aff'd sub nom. White v. City of Detroit, Mich.*, 38 F.4th 495 (6th Cir. 2022) ("An important limitation on *Monell* liability is applicable here.  A municipality cannot be subject to § 1983 liability unless one of the municipality's officers or employees committed an underlying unconstitutional act.").   In other words, there can be no plausible *Monell* liability where a plaintiff cannot plausibly allege that the conduct underlying the *Monell* liability was unconstitutional.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'"  *Gaines*, 657 F. Supp. 3d at 748 (quoting *West v.*

11

*Atkins*, 487 U.S. 42, 48 (1988)).  The Fourth Circuit confirmed post-*Brady* that "a police officer's failure to disclosure exculpatory evidence to a prosecutor violates a defendant's due process rights."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).  To plausibly allege that an officer violated this constitutional right, a plaintiff "must allege, and ultimately prove, that (1) the evidence at issue was favorable to [him]; (2) the [o]fficers suppressed the evidence in bad faith; and (3) prejudice ensued."  *Id.* (citing *Monroe v. Angelone*, 323 F.3d 286, 299–300 (4th Cir. 2003)).  "Evidence that is favorable to the accused includes both exculpatory (whether requested by defendant or not) and impeachment evidence."  *Moore v. Warden*, No. CV JKB-20-512, 2024 WL 624056, at *5 (D. Md. Feb. 13, 2024).  "A plaintiff need not demonstrate bad faith directly; it can be inferred through gross deviations from routine police conduct . . . Moreover, bad faith can be inferred when police officers fabricate evidence and fail to disclose especially pertinent exculpatory evidence."  *Johnson v. Balt. Police Dep't*, No. ELH-19-00698, 2020 WL 1169739, at *24 (D. Md. Mar. 10, 2020).  "Prejudice ensues if there is a reasonable probability that the jury would have reached a different result had the evidence been properly disclosed."  *Owens*, 767 F.3d at 397.  The allegedly suppressed evidence must also be "material to the defendant's guilt or punishment."  *Smith v. Cain*, 565 U.S. 73, 75 (2012).

Here, there is one fundamental issue with Plaintiff's underlying *Brady* withholding claim against Chief Peterson, which is in turn relied upon to support Rising Sun's liability under *Monell*: Plaintiff was never convicted of any criminal charges or otherwise faced an adverse outcome in his underlying criminal proceedings.  Neither party provides case law from the Fourth Circuit supporting the specific notion that a plaintiff may still pursue a *Brady*-based withholding claim after acquittal of the underlying criminal charges or after the underlying criminal charges are dismissed or dropped without an accompanying conviction (in fact, Defendants rely on this lack

of authority in their reply).  (ECF No. 52 at 3–4).  To the contrary, the Fourth Circuit found in *Taylor v. Waters* that no settled Fourth Amendment authority prohibited an officer from withholding exculpatory evidence from a § 1983 plaintiff who was never tried on the underlying criminal charges (and therefore not convicted).  81 F.3d 429, 435–36 (4th Cir. 1996); *see also id.* at 436 n.5 ("To the extent that *Goodwin* [*v. Metts*, 885 F.2d 157 (4th Cir. 1989)] bases its holding on a conclusion that the officer's failure to disclose exculpatory evidence deprived the § 1983 plaintiffs of a liberty interest in avoiding prosecution on less than probable cause, that reasoning has been rejected [by the Supreme Court] in *Albright*.").  Any conclusion to the contrary is further untenable when considering both the persuasive authority regarding this issue and Supreme Court precedent analyzing *Brady*-based withholding claims.

First, the majority of jurisdictions to address this issue have historically held the opposite. *See, e.g.*, *Hahn v. Sargent*, 523 F.2d 461, 467 (1st Cir. 1975) ("The tardy and reluctant disclosure of exculpatory evidence establishes no triable issue, for . . . appellant suffered no prejudice as a consequence of the late disclosure.  The material was made available in time to aid the defense in its cross-examination . . . and appellant was acquitted."); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) ("Finally, appellant's fourth claim is for wrongful suppression of exculpatory evidence.  Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence.  Therefore, appellant has failed to state an independent claim based on this act of suppression."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff . . . was never convicted and, therefore, did not suffer the effects of an unfair trial.  As such, the facts of this case do not implicate the protections of *Brady*."); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot

be said to have been deprived of the right to a fair trial."); *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644–45 (7th Cir. 2008) ("Several of our sister circuits to consider the question have concluded that a *Brady* claim is extinguished when a defendant is acquitted or charges are dropped . . . Because [plaintiff] did not suffer the harm that *Brady* aims to prevent, we therefore conclude there was no *Brady* violation here."); *Pruitt v. Cnty. of Sacramento*, No. CIV. 2:10-416 WBS, 2011 WL 219551, at *4 (E.D. Cal. Jan. 20, 2011) ("The Ninth Circuit recently held that a criminal defendant who is not convicted of the underlying charges brought against him is not entitled to pursue a § 1983 claim for suppression of material or exculpatory evidence in violation of *Brady v. Maryland*.") (citing *Smith v. Almada*, 623 F.3d 1078, 1088 (9th Cir. 2010), *opinion withdrawn and superseded*, 640 F.3d 931 (9th Cir. 2011));[7] *Paulin v. City of Beacon*, No. 17-CV-5105 (KMK), 2019 WL 4274211, at *4 (S.D.N.Y. Sept. 10, 2019) ("The Second Circuit 'has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred.'") (quoting *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014)).

Second, such a conclusion does not comport with the Supreme Court's guidance regarding what constitutes "material" evidence for purposes of establishing a *Brady* violation. For instance, in *Smith v. Cain*, the Supreme Court explained its longstanding precedent that "evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the

---

[7] Although the Ninth Circuit's opinion in *Smith* was superseded, the court's subsequent opinion did not reverse its prior holding that a conviction is required to maintain a *Bady*-based withholding claim. Rather, the court instead hinged its decision on a "finding that the arguably non-disclosed evidence would not have resulted in a different outcome." *Smith*, 640 F.3d at 934; *see also id.* at 942 (Gwin, J., concurring) ("No known cases have allowed a *Brady*-based § 1983 claim where there has not been a conviction.").

evidence, only that the likelihood of a different result is great enough to undermine[] confidence in the outcome of the trial." 565 U.S. at 75 (internal quotations omitted). The Supreme Court has historically emphasized the outcome-centered inquiry underlying whether any potential *Brady* violation is actionable as being material and/or prejudicial. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (noting that the "touchstone of materiality is a 'reasonable probability' *of a different result*, and the adjective is important") (emphasis added); *Strickler v. Greene*, 527 U.S. 263, 282–83 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence *would have produced a different verdict*.") (emphasis added); *Banks v. Dretke*, 540 U.S. 668, 699 (2004) ("Unless suppressed evidence is 'material for *Brady* purposes, [its] suppression [does] not give rise to sufficient prejudice to overcome [a] procedural default. Our touchstone on materiality is [*Kyles*] . . . In short, [plaintiff] must show a 'reasonable probability of a *different result*.'") (emphasis added) (quoting *Kyles*, 514 U.S. at 434); *Turner v. United States*, 582 U.S. 313, 324 (2017) ("[T]he *Brady* rule's 'overriding concern [is] with the justice *of the finding of guilt*.'") (emphasis added) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Judge Brown of the Cecil County Circuit Court dismissed all criminal charges against Plaintiff stemming from Plaintiff's alleged conduct upon arriving at the Fire Hall. The outcome of his criminal prosecution was thus the same outcome that Plaintiff suggests would have occurred if the allegedly exculpatory evidence was disclosed to him earlier: acquittal and/or dismissal of all charges against him. Plaintiff therefore cannot plausibly allege a *Brady*-based withholding claim because he cannot plausibly allege that any disclosure would have produced a *different* result for Plaintiff. And because Plaintiff cannot plausibly allege a *Brady*-based withholding claim in Count V, he likewise cannot use a *Brady*-based withholding claim to support Rising Sun's liability under

*Monell* for the same.  This does not foreclose Plaintiff from using the allegedly wrongful withholding of evidence (or the evidence itself) in support of his malicious prosecution claims (which no Defendants have moved to dismiss), but it may not support an independent claim.  Count V is accordingly dismissed in its entirety.[8]  Although not directly implicated by Defendants' motion, Count IV (also alleging failure to disclose exculpatory evidence against Officer Stickney under the Fifth and Fourteenth Amendments through § 1983) must also be dismissed for the same reasons.

C.   Count IX (failure to disclose exculpatory evidence) must also be dismissed

Count V of Plaintiff's Amended Complaint—discussed above—is explicitly rooted in alleged violations of the Fifth and Fourteenth Amendments to the United States Constitution. (ECF No. 39 at 23).  Count IX alleges failure to disclose exculpatory evidence in violation of Articles 24 and 26 of the Maryland Declaration of Rights.  *Id.* at 31.  Regarding Article 24:

> Article 24 of the Maryland Declaration of Rights is the state law equivalent of the Fourteenth Amendment of the United States.  Article 24 has been interpreted to apply in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution, so that decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.  Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment.

*Verderamo v. Mayor & City Council of Balt.*, 4 F. Supp. 3d 722, 732–33 (D. Md. 2014) (internal quotations and citations omitted); *see also Urbanewitz v. Cecil Coll.*, No. CV RDB-21-2175, 2022 WL 605384, at *3 (D. Md. Mar. 1, 2022).  Article 26 is also "construed *in pari materia*" with the Fourteenth Amendment, making "[c]onstructions of the federal amendment by the United States

---

[8] Because the Court concludes that Count V must be dismissed, the Court need not consider whether Chief Peterson is entitled to qualified immunity on Plaintiff's *Brady*-based withholding claim.  (ECF No. 36-1 at 16).  The Court likewise need not consider whether Plaintiff has set forth a viable *Longtin* claim, which is the state analogue to a federal *Monell* claim.  *See Palma v. Montgomery Cnty., Md.*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022) ("The state analogue to a *Monell* claim under Maryland Law is known as a *Longtin* claim.  Thus, *Monell* and *Longtin* claims rise or fall together, and the Court need not undertake an independent analysis of the sufficiency of the latter.").

Supreme Court [] controlling authority." *Fields v. State*, 203 Md. App. 132, 142 n.1 (2012).

Further, claims under Articles 24 and 26 are construed *in pari materia* with the Fifth Amendment.

*See, e.g.*, *Widgeon v. E. Shore Hosp. Ctr.*, 300 Md. 520, 532 (1984) ("In addition, because Articles

24 and 26 of the Maryland Declaration of Rights, which are at issue here, have consistently been

held to be in 'pari materia' with or 'equated with' the Fourth, Fifth, and Fourteenth Amendments

to the United States Constitution, Supreme Court decisions with regard to those amendments are

particularly persuasive."); *Allmond v. Dep't of Health & Mental Hygiene*, 448 Md. 592, 609

(2016).  Accordingly, because Plaintiff cannot plausibly allege a *Brady*-based withholding claim

in Count V under either the Fifth or Fourteenth Amendment for the reasons explained above,

Plaintiff also cannot plausibly allege a *Brady*-based withholding claim in Count IX under either

Article 24 or Article 26 of the Maryland Declaration of Rights.  Count IX is therefore dismissed

in its entirety.[9]

> D. <u>Rising Sun is entitled to governmental immunity under Count XIV (negligent hiring
> and retention)</u>

Defendants next seek dismissal of Count XIV (negligent hiring and retention) because both

enjoy immunity thereunder.  (ECF No. 36-1 at 22–26).  Defendants do not expressly argue that

Plaintiff has failed to plausibly allege the elements of a negligent hiring and retention claim under

Maryland law.  Rather, Defendants' argument is split into two segments: (1) that Rising Sun enjoys

governmental immunity; and (2) that Chief Peterson enjoys public official immunity.  *Id.*

Regarding argument (1), "At common law, local governments in Maryland enjoy governmental

---

[9] In his opposition, Plaintiff submits that "Count IX alleges that Defendant Stickney used excessive and unreasonable force during the arrest of" Plaintiff in violation of the Fourth Amendment and that "The remainder of Count IX mirrors Count V."  (ECF No. 48 at 18).  The Court declines to construe Count IX as setting forth a cause of action under the Fourth Amendment for two reasons.  First, Count IX is denoted as one only for "failure to disclose exculpatory evidence" under the "Maryland Constitution."  (ECF No. 39 at 31).  Second, Plaintiff asserts in Counts VI and VII that all Defendants violated the Maryland Declaration of Rights by unlawfully seizing Plaintiff and using excessive force which, when construing such claims *in pari materia* with Plaintiff's Fourth Amendment claims in Counts I and II, makes any Fourth Amendment claim in Count IX duplicative.

immunity in negligence actions when the activity forming the basis of the lawsuit is 'governmental,' rather than 'proprietary,' in nature, unless such immunity is waived statutorily by the General Assembly." *Edwards v. Mayor & City Council of Balt.*, 176 Md. App. 446, 466 (2007). Maryland courts have also routinely held that "the Local Government Tort Claims Act of the Courts and Judicial Proceedings Article ('CJP'), does not specifically waive immunity for common law tort claims against a County or municipality in its own capacity, for governmental actions." *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 558 (2013); *see also id.* at 559 ("Accordingly, the circuit court correctly ruled that the County could not be sued in its own capacity for common law tort liability, including for the torts of negligent hiring, retention, or entrustment . . . The alleged acts or omissions of the County in that regard were governmental, and therefore the county was shielded from tort liability for them by governmental immunity."). Under these principles, conduct by police officials "purporting to enforce the State criminal law" in their capacity as police officials is "quintessentially governmental in nature. There is, therefore, no *common law* liability on the part of the City" in such instances. *DiPino v. Davis*, 354 Md. 18, 48 (1999) (emphasis in original).

Plaintiff "agrees that the Town has governmental immunity for the common law claim alleged in Count XIV because the operation of its police department is 'quintessentially governmental' activity." (ECF No. 48 at 21). Defendants' motion is therefore granted to the extent that Count XIV may not proceed against Rising Sun because Rising Sun enjoys governmental immunity thereunder.[10]

---

[10] Plaintiff notes that, under the Local Government Tort Claims Act, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." (ECF No. 48 at 21) (quoting Md. Courts & Jud. Proc. § 5-303(b)). Although true, this provision regarding liability for damages does not waive Rising Sun's governmental immunity regarding Count XIV.

E.  Chief Peterson is not entitled to public official immunity with respect to Count XIV

Defendants then argue that Chief Peterson is entitled to public official immunity with regard to Count XIV.  (ECF No. 36-1 at 24–26).  "In Maryland, public official immunity is recognized both at common law and by statute." *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 328 (2001).  That statute may be found at Md. Code Ann., Cts. & Jud. Proc. § 5-507, which provides: "An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." *Id.* § 5-507(a)(1). The doctrine aims to "permit police officers . . . to make the appropriate decisions in an atmosphere of great uncertainty" because "holding police officers liable in hindsight for every injurious consequence would paralyze the functions of law enforcement." *Cherkes*, 140 Md. App. at 328. For common law public official immunity to apply:

> (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial acts; and (3) the actor must have performed the relevant acts within the scope of his official duties.

*City of District Heights v. Denny*, 123 Md. App. 508, 516 (1998).

"If those three conditions are met, the public official enjoys a qualified immunity in the absence of 'malice.'" *Id.*  "The actual malice needed to defeat official immunity requires an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Leese v. Balt. Cnty.*, 64 Md. App. 442, 480, (1985), *cert. denied*, 305 Md. 106, (1985), *overruled on other grounds by Woodruff v. Trepel*, 125 Md. App. 381 (1999).  Maryland's highest court then expanded this "exception" to public official immunity to include "gross negligence" in *Cooper v. Rodriguez*, 443 Md. 680, 723–24 (2015).  *Cooper* defined "gross negligence" as follows:

> [A]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.  Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Id.* at 708.  "Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case[,] and is usually a question for the jury and is a question of law only when reasonable [people] could not differ as to the rational conclusion to be reached."  *Id.* at 708–09 (citing *Romanesk v. Rose*, 248 Md. 420, 423 (1968)).

Here, Plaintiff's Amended Complaint sets forth no allegations that Chief Peterson acted with malice in hiring and/or retaining Officer Stickney.  However, Plaintiff's Amended Complaint sufficiently alleges that Chief Peterson acted with gross negligence in hiring and/or retaining Officer Stickney.  For instance, Plaintiff alleges that Chief Peterson was aware of at least three separate lawsuits in which plaintiffs asserted "civil rights or serious abuses of [Officer Stickney's] police powers while employed as a police officer in Pennsylvania."  (ECF No. 39 at 36).  The Amended Complaint further alleges that Cecil County State Attorney's Office staff informed Chief Peterson in July 2011—two years after hiring Officer Stickney—that there were ongoing concerns regarding Officer Stickney's conduct.  *Id.* at 37.  Specifically, that Officer Stickney unlawfully coerced confessions from prior suspects and misreported the amount of drugs he seized from those suspects.  *Id.* at 37.  Plaintiff also claims that, in August 2011, Chief Peterson received the results of an internal investigation into Officer Stickney's actions that "substantiated misconduct by [Officer] Stickney."  *Id.*

Plaintiff then alleges in detail that Officer Stickney was subject to further investigation and/or criminal charges for various instances of misconduct, including: (1) a 2012 lawsuit against

Officer Stickney alleging misconduct; (2) Officer Stickney being charged with three counts of perjury in May 2014 resulting from false testimony in two court proceedings and one affidavit; (3) Officer Stickney's failure to disclose his involvement in a March 2015 (or thereabout) traffic stop, which required dismissing the subsequent charges; (4) Officer Stickney being charged in 2016 "with second degree assault of a 17-year-old girl and misconduct as a police officer after the assault was observed by court personnel and captured by store video surveillance cameras"; (5) a May 2019 lawsuit against Officer Stickney for alleged civil rights violations; and (6) a July 2022 lawsuit against Officer Stickney for using unlawful and excessive force (in which Chief Peterson was sued as a co-defendant), which was still pending when Officer Stickney allegedly violated Plaintiff's rights in this case.  *Id.* at 36–39.   Accepting these allegations as true, Plaintiff's Amended Complaint sufficiently alleges that Chief Peterson either (1) hired Officer Stickney with gross negligence given Officer Stickney's already-documented alleged misconduct as a police officer; (2) retained Officer Stickney in light of credible internal investigations highlighting contemporaneous misconduct in addition to his prior alleged misconduct; (3) retained Officer Stickney in light of Officer Stickney repeatedly being the subject of serious allegations of police misconduct over the course of several years in both Pennsylvania and Maryland; or (4) all of the preceding.  Defendants' motion is therefore denied to the extent that it seeks dismissal of Count XIV against Chief Peterson as an immune public official.

F.  <u>Bifurcation is appropriate regarding Count XIV against Chief Peterson</u>

Finally, Defendants ask that "should this Court determine that dismissal of Counts V, IX, or XIV is not appropriate, Chief Peterson and [Rising Sun] respectfully request that the Court bifurcate and stay discovery with respect to Chief Peterson (Count XIV only) and [Rising Sun] (Counts V, IX, and XIV)."  (ECF No. 36-1 at 27).   To summarize the Court's holdings thus far:

(1) Count IV is dismissed in its entirety; (2) Count V is dismissed in its entirety; (3) Count IX is dismissed in its entirety; (4) Count XIV is dismissed to the extent that it is raised against Rising Sun; and (5) Count XIV may proceed as alleged against Chief Peterson.  Thus, the only remaining issue is whether it serves the Court's and parties' best interests to bifurcate only the Maryland common law claim of negligent hiring and retention asserted against Chief Peterson in Count XIV.

As Defendants point out, succeeding on a negligent hiring and retention claim in Maryland requires proving, among other things, that "the employee's act or omission caus[ed] the plaintiff's injuries," and that "the employer's negligence in hiring, [training, or supervising the employee] . . . [w]as the approximate cause of plaintiff's injuries."  *Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022) (citing *Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-cv-654-AW, 2012 WL 527597, at *5 (D. Md. Feb. 16, 2012)).  It is both convenient and economical to bifurcate that claim considering that Count XIV cannot be maintained against Chief Peterson if it is ultimately determined that Officer Stickney did not injure Plaintiff.  Plaintiff rebuts that bifurcating Count XIV against Chief Peterson is judicially uneconomic because "bifurcation could lead to multiple discovery demands directed to Chief Peterson" and "different times and risks [of] needless duplication of discovery."  (ECF No. 48 at 22).  However, the discovery implicated under Count XIV would be of a different type and likely more limited to the knowledge available to Chief Peterson when hiring and retaining Officer Stickney, which would be aside from the merits of Plaintiff's claims against Officer Stickney from his alleged April 3, 2022, and subsequent conduct.[11]  Put simply, Count XIV against Chief Peterson will either (1) be moot if Plaintiff cannot demonstrate his underlying injuries by Officer Stickney, or (2) depend on different discovery than

---

[11] To be clear, the Court in no way intends to prematurely set forth the scope of discovery under Count XIV at this time, assuming *arguendo* that Count XIV will proceed after adjudicating the non-bifurcated claims.

that necessary for Plaintiff to prove his other claims.  The Court will therefore grant Defendants'

request to bifurcate Count XIV against Chief Peterson and stay discovery related to the same.

**IV.    CONCLUSION**

      For the foregoing reasons, Defendant Chief Peterson Jr.'s and Defendant Rising Sun's joint

Partial Motion to Dismiss the Complaint or, in the Alternative, Motion to Bifurcate and Stay

Discovery (ECF No. 36) is granted in part and denied in part.  A separate Order follows.


Date: <u>May 10, 2024</u>                                          <u>        /s/         </u>
                                                          J. Mark Coulson
                                                          United States Magistrate Judge