IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MATTHEW A. TELEP,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:23-cv-02379-JMC |
| **KARA ANNE STICKNEY** *as the Personal Representative of the Estate of DANIEL J. STICKNEY, Jr., et al.*, | * * | |
| *Defendants.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

This matter arises from the arrest of Plaintiff, Matthew A. Telep, after Plaintiff arrived to pick-up his then seventeen-year-old daughter from a wedding at which multiple fights had broken out. Telep filed the present lawsuit against Kara Anne Stickney (as personal representative of the estate of Daniel J. Stickney, Jr.),[1] Stephen S. McKinney, Francis D. Peterson, Jr., the Town of Rising Sun, Maryland ("Town of Rising Sun"), Kyle L. Thomas, Alexander Dowling, and Heather A. Cotton on August 30, 2023. (ECF No. 1). An Amended Complaint was filed on March 28, 2024, which is the operative complaint. (ECF No. 39). Telep asserts multiple counts against Defendants for violations of his rights under the United States Constitution and the Maryland Declaration of Rights, as well as several common law tort claims. *Id.* Currently pending before the Court is a Motion for Summary Judgment jointly filed by Defendants Dowling and Thomas. (ECF No. 69). The motion has been fully briefed, (ECF Nos. 73 and 76), and no hearing is necessary.

---

[1] Plaintiff's lawsuit originally named Daniel J. Stickney as a Defendant. (ECF No. 1). However, Mr. Stickney passed away on January 10, 2024, and the Court granted Plaintiff's unopposed motion to substitute Kara Anne Stickney, as personal representative of Mr. Stickney's estate, as a Defendant. (ECF No. 31).

*See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Defendants' motion shall be DENIED.

I.     **BACKGROUND**

     a.  **The Parties**

Plaintiff is a retired state trooper currently residing in Rising Sun, Maryland. (ECF No. 39 at 1). At all times relevant to Plaintiff's claims: Daniel Stickney, Jr., ("Officer Stickney"),[2] was a police officer employed by the Rising Sun Police Department and the Town of Rising Sun; Defendant Kara Anne Stickney, ("Defendant Stickney"), is the personal representative of the estate of Officer Stickney following his passing; Defendant McKinney was a police officer also employed by the Rising Sun Police Department and the Town of Rising Sun; Defendant Peterson Jr. served as the Chief of Police for the Rising Sun Police Department, and was also employed by the Town of Rising Sun; Defendant Town of Rising Sun is a municipal corporation located in Cecil County, Maryland; and Defendants Thomas, Dowling, and Cotton were deputy sheriffs employed by the Cecil County Sheriff's Department. *Id.* at 2-3.

     b.  **Factual Background**[3]

On April 3, 2022, Plaintiff's then seventeen-year-old daughter, Jordan Telep, attended the wedding of Curtis and Kyria Miller at the Rising Sun Fire Hall. (ECF No. 73-1 at 29).[4] At some point in the evening multiple fights broke out at the wedding and the police were called. (ECF No. 73-3). Jordan phoned her parents from the Fire Hall, in tears, and told them she had been

---

[2] The Court will refer to Daniel Stickney, Jr. as "Officer Stickney" so as to avoid confusing Officer Stickney with Ms. Kara Anne Stickney.
[3] The following facts are undisputed unless noted otherwise.
[4] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

2

physically attacked by Ms. Miller and several of her female relatives. (ECF No. 73-1 at 32). Plaintiff and his wife, Jennifer Telep, quickly headed to the venue. *Id.*

When they arrived at the Fire Hall, Jordan was standing outside the venue beside her car, "crying and visibly shaking." *Id.* at 34-35. The parking lot was filled with other wedding attendees' cars, and Plaintiff's wife testified at deposition there were "40 or 50 people standing outside the venue, screaming back and forth, hollering, [and] going on." (ECF No. 73-11 at 9). Police from the Cecil County Sheriff's Office and the Rising Sun Police Department were already on the scene and in the process of shutting down the wedding reception. *Id.* at 34. Plaintiff's wife went to check on Jordan, while Plaintiff proceeded to enter the Fire Hall, purportedly for the purpose of obtaining information from Ms. Miller about the alleged assault on Jordan. (ECF No. 73-1 at 35). Per a declaration submitted by Defendant Cotton, as Plaintiff entered the Fire Hall, Deputy Odom (who was stationed outside, and is not a party to this litigation) radioed the police inside, stating, "you have a hostile male coming inside." (ECF No. 69-3 at 2).

As will be discussed, there are differing accounts as to what occurred next. It appears undisputed that Plaintiff walked past a group of officers on his way to speak with Ms. Miller, asking, "where's the bride?" (ECF No. 73-1 at 36-38). Defendant Dowling described Plaintiff as "visibly enraged" while entering the Fire Hall, writing in a supplemental police report that Plaintiff approached Ms. Miller "at a fast pace, with clenched fists and growing increasingly louder with his statements, displaying a physical demeanor that was aggressive and threatening towards the female." (ECF No. 73-5 at 2). Defendant Thomas similarly characterizes Plaintiff's demeanor as aggressive and threatening, as do Defendant Cotton and Deputy Odom in their respective

3

affidavits. (ECF No. 69-5; ECF No. 69-3; ECF No. 76-1).[5] Plaintiff, however, "denies he was yelling, denies he was being combative, and denies he clenched his fist." (ECF No. 73 at 8) (citing ECF No. 73-1 at 36-37). Plaintiff alleges that he approached Ms. Miller and started to ask her why she would assault Jordan, and was mid-sentence when he was tackled from behind by Defendants Dowling and Thomas. (ECF No. 73-1 at 36-38). The Rising Sun officers then joined in the efforts to detain Plaintiff, and Officer Stickney dry stunned Plaintiff with a taser twice. (ECF No. 73-3). Plaintiff's wife testified that she saw the deputies, "throwing elbows, punching [Plaintiff] in the sides," and "kneeing and kicking him in the sides" while Plaintiff was saying, "I'm not resisting, man" and "why are you doing this to me." (ECF No. 73-11 at 9). Plaintiff was then arrested and transported to the Rising Sun Police Station for processing. (ECF No. 73-3).

Officer Stickney and Defendant Dowling were recorded on Officer Stickney's body-worn camera immediately following Plaintiff's arrest. (ECF No. 73-7). In the video, the two are seen laughing together about the arrest, and Deputy Dowling describes "hip tossing" Plaintiff to the ground. *Id.* Plaintiff notes in his Opposition that "[a]lthough Officers Stickney and McKinney activated their body cameras before and after the arrest, neither captured the events leading up to Telep's arrest or the actual arrest or, if they were captured, that portion of the recordings has been deleted." (ECF No. 73 at 10 n.4). Regardless of the reason why, no body-worn camera footage capturing the arrest itself has been produced in this litigation.

   c. **Procedural History**

---

[5] Defendants Dowling and Thomas also provide an affidavit signed by Ms. Miller in support of their motion. (ECF No. 69-6). However, Plaintiff attached text communications to his Opposition between Ms. Miller and Defendants' counsel, in which Ms. Miller indicates she wishes to withdraw her affidavit because she felt pressured to execute it and is uncomfortable with "some of the wording." (ECF No. 73-9). In their Reply brief, Defendants argue that the affidavit was not withdrawn and provide email communications dated before the affidavit's execution as evidence that it was voluntarily signed. (ECF No. 76 at 4). In any case, as will be discussed, because the Court relies on other evidence in the record to find that genuine disputes of fact preclude summary judgment, the issue of whether Ms. Miller's affidavit should be considered withdrawn need not be reached.

Based on the foregoing allegations,[6] Plaintiff's lawsuit alleges that: Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from unlawful seizures (Count I); Defendants Officer Stickney, McKinney, Thomas, Dowling, and Cotton—in their individual capacities—violated Plaintiff's Fourth Amendment right to be free from the use of excessive and unreasonable force (Count II); Officer Stickney—in his individual capacity—violated Plaintiff's Fourth Amendment right to be free from malicious prosecution (Count III); Officer Stickney—in his individual capacity—violated Plaintiff's Fifth and Fourteenth Amendment rights by intentionally concealing exculpatory information (Count IV); Chief Peterson and Rising Sun violated Plaintiff's Fifth and Fourteenth Amendment rights by failing to disclose exculpatory evidence (Count V); all Defendants violated Article 26 of the Maryland Declaration of Rights by unlawfully seizing Plaintiff (Count VI); all Defendants violated Article 26 of the Maryland Declaration of Rights by using excessive and unreasonable force (Count VII); Officer Stickney and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by maliciously prosecuting Plaintiff (Count VIII); Officer Stickney, Chief Peterson, and Rising Sun violated Articles 24 and 26 of the Maryland Declaration of Rights by failing to disclose exculpatory evidence (Count IX); Officer Stickney, McKinney, Thomas, and Dowling battered Plaintiff (Count X); Officer Stickney, McKinney, Thomas, and Dowling falsely arrested Plaintiff (Count XI); Officer Stickney, McKinney, Thomas, and Dowling falsely imprisoned Plaintiff (Count XII); Officer Stickney maliciously prosecuted Plaintiff (Count XIII); and Chief Peterson and Rising Sun negligently hired and retained Officer Stickney (Count XIV). (ECF No. 39).

---

[6] Several of Plaintiff's claims relate to the events following his arrest and the fact that he faced criminal charges. These facts are discussed in the Court's prior opinion denying Officer McKinney's motion for summary judgment. (ECF No. 49). Because this background is not pertinent to Plaintiff's claims against Defendants Dowling and Thomas, the case Court will not elaborate on them here.

The undersigned denied Defendant McKinney's Motion for Summary Judgment on May 3, 2024. (ECF No. 49). On May 10, 2024, the undersigned granted in part and denied in part Defendants' jointly filed Partial Motion to Dismiss the Complaint, or in the Alternative, Motion to Bifurcate and Stay Discovery. (ECF No. 53). Counts IV, V, and IX were dismissed in their entirety. *Id.* The Court additionally dismissed Count XIV against the Town of Rising Sun, determined that Counts I-IV could not proceed against the named Defendants in their official capacities,[7] and bifurcated Count XIV to the extent it remained against Defendant Chief Peterson. *Id.* On March 26, 2025, this Court approved a stipulation of voluntary dismissal dismissing all claims against Defendants McKinney and Cotton without prejudice. (ECF No. 67).

Currently pending is a motion for summary judgment filed by Defendants Dowling and Thomas. (ECF No. 69). They jointly move for summary judgment as to all remaining claims against them: Counts I, II, VI, VII, and X-XII. *Id.*

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but

---

[7] Defendants' motion as to Counts I-IV was actually denied as moot because Plaintiff did not name the Defendants in their official capacities. (ECF No. 53 at 8).

rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III. ANALYSIS

    a. **Fourth Amendment unlawful seizure and excessive force claims: Counts I and II**
        i. **There are genuine disputes of material fact as to whether the seizure of Plaintiff was reasonable under the Fourth Amendment.**

Defendants Dowling and Thomas aver they are entitled to summary judgment on Plaintiff's unlawful seizure claim because they "had ample cause to grab Plaintiff to restrain him and take him to the ground to disrupt [his] assaultive behavior and prevent the completion of a reasonably perceived imminent battery." (ECF No. 69-1 at 9). The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). "Thus, '[i]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon

7

probable cause ensues.'" *Id.* (quoting *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001)). "Probable cause is determined by a totality-of-the-circumstances approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)) (internal quotation marks omitted). Two factors are considered: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Id.* (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)).

Defendants Dowling and Thomas maintain the seizure of Plaintiff was justified by Plaintiff's allegedly threatening demeanor, which they characterize as an assault, and imminent battery upon Ms. Miller. (ECF No. 69-1 at 8). The probable cause inquiry is informed by the "contours of the offense" at issue, and the Court will therefore rely on Maryland's assault statute in determining whether a reasonable officer could believe Plaintiff's seizure was permissible. *See Hupp*, 931 F.3d at 318-19 (considering West Virginia obstruction statute in finding whether officers could have reasonably concluded there existed probable cause to arrest plaintiff). Maryland's criminal code defines assault as "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." Md. Code Ann., Crim. Law § 3-201(b). Maryland's courts have clarified that "second-degree assault encompasses three modalities: (1) intent to frighten, (2) attempted battery, and (3) battery." *Snyder v. State*, 63 A.3d 128, 135 (Md. Ct. Spec. App. 2013). Defendants Dowling and Thomas appear to rely exclusively upon the intent to frighten theory of assault in support of their motion, (ECF No. 69-1 at 9), an offence which is comprised of three elements: "(1) the defendant committed an act with the intent to place the victim in fear of immediate physical harm; (2) the defendant had the apparent ability at the time of the act to bring about the threatened physical harm; and (3) the victim was aware of the threat[.]" *Garcia*

*v. Montgomery Cnty.*, 145 F. Supp. 3d 492, 521 (D. Md. 2015) (citing *Jones v. State*, 103 A.3d 586, 589 (Md. 2014)).

Considering these principles in conjunction with the record in this matter, the Court determines that disputes of fact preclude finding that a reasonable officer in the positions of Defendants Dowling and Thomas could have concluded there was probable cause to seize Plaintiff. Critically, the parties dispute whether Plaintiff approached Ms. Miller in an aggressive manner. They dispute the speed at which Plaintiff walked towards her, whether he yelled at her, and if his fist was clenched. *Compare* ECF No. 75-4 (Defendant Dowling's report describing Plaintiff entering the Fire Hall "visibly enraged, making loud, verbal statements regarding his daughter being assaulted" and "stepp[ing] even closer to [Ms. Miller], at a fast pace, with clenched fists") *and* ECF No. 73-2 at (Plaintiff's affidavit attesting "I walked into the Fire Hall at a normal pace[.]"); *see also* ECF No. 73-1 at 38-41 (Plaintiff's testimony that he did not approach Ms. Miller with a closed fist and could not speak very loudly because he was "getting over bronchitis"). There is also a dispute as to whether the deputies commanded Plaintiff to stop as he approached Ms. Miller. (ECF No. 69-4 at 2). Further, because Defendants have produced no body-worn camera footage of the incident, the Court can only rely on the parties' conflicting accounts of what occurred.

The manner in which Plaintiff approached Ms. Miller is material as to whether a reasonable officer in Defendants Dowling and Thomas' position could have concluded that Plaintiff acted with the intent to place Ms. Miller in fear of physical harm, or that he had the present ability to bring about the threatened harm, such that there existed probable cause to seize him. *See Garcia*, 145 F. Supp. 3d at 521 (finding no reasonable basis for probable cause based on intent to frighten second-degree assault where arrestee allegedly cursed and pointed at another person and police

were standing only a few feet away). Because there are genuine disputes of fact as to Plaintiff's conduct leading up to his seizure and arrest, summary judgment as to Count I shall be denied.

### ii. There are genuine disputes of material fact as to whether the force used to detain Plaintiff was objectively reasonable.

Defendants Dowling and Thomas next contend their use of force was objectively reasonable because "[t]he severity of a potential battery of a pregnant bride is obviously significant and Plaintiff's behavior posed an immediate threat to her safety." (ECF No. 69-1 at 10). "A claim that a police officer used excessive force in making an arrest, investigatory stop, or seizure of a person is 'properly analyzed under the Fourth Amendment's objective reasonableness standard." *Dorsey v. Sokoloff*, 381 F. Supp. 3d 521, 531 (D. Md. 2019) (quoting *Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 899 (4th Cir. 2016)); *see Fernandes v. Montgomery Cnty.*, No. AW-10-cv-752, 2012 WL 1664086, at *3 (D. Md. May 10, 2012) ("[An excessive force] claim is analyzed under objective standards of reasonableness, meaning an officer's actions are not excessive if they are 'objectively reasonable in light of the facts and circumstances confronting [the officer].'") (quoting *Graham v. Connor*, 490 U.S. 397 (1989)). "Courts examine three factors [under *Graham*] to determine if an officer's use of force was objectively reasonable: (1) the severity of the crime at issue, (2) the extent to which a suspect poses an immediate threat to the safety of the officers or others, and (3) the extent to which a suspect is actively resisting arrest or attempting to evade arrest by flight." *Dorsey*, 381 F. Supp. 3d at 531 (internal quotations omitted). "The determination is to be made from the perspective of a reasonable officer on the scene . . . based upon the information the officers had when the conduct occurred." *McCullough v. Anne Arundel Cnty.*, No. CV CCB-19-926, 2022 WL 959516, at *8 (D. Md. Mar. 30, 2022) (cleaned up).

The genuine disputes of fact identified above likewise make summary judgment inappropriate on Plaintiff's excessive force claim. *See supra* Sec. III(a)(i). The first *Graham* factor

favors Plaintiff because he was ultimately arrested for various misdemeanors, relatively non-serious crimes. *See, e.g.*, *Est. of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 417 (D. Md. 2014) (noting that trespass and disturbing the peace are "relatively minor" offenses for purposes of a *Graham* factor analysis); *Santana v. State*, No. 1146, 2024 WL 226590, at *9 (Md. App. Ct. Jan. 22, 2024); *Britton v. State*, 30 A.3d 236, 242-43 (Md. Ct. Spec. App. 2011) (explaining that second-degree assault under § 3-203(a) of Maryland's criminal code is a misdemeanor). Moreover, per Plaintiff's deposition testimony, he was committing no crime when Defendants Thomas and Dowling tackled him, and was merely attempting to speak with Ms. Miller to inquire about the details of the alleged assault on his daughter. (ECF No. 73-1 at 38). If Plaintiff's account is credited, this factor weighs even more heavily Plaintiff's favor. *See Dorsey*, 381 F. Supp. 3d at 531 ("When the subject of a seizure has not committed any crime, this factor weighs heavily in [the subject's] favor.") (internal quotation omitted).

There are also genuine disputes of fact regarding the second and third *Graham* factors. With respect to the second factor, according to Plaintiff's disputed version of events, he merely approached Ms. Miller at a "normal pace" and started to ask her a question at an ordinary speaking volume before being tackled from behind. (ECF No. 73-1 at 38-41). Viewing the factual allegations and disputed facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Plaintiff did not pose an immediate threat to the safety of the officers or others. As for the third *Graham* factor, Defendants Dowling and Thomas contend that Plaintiff resisted being handcuffed after he was tackled, requiring Officer Stickney to tase him so that he could be cuffed. (ECF No. 69-4 at 2; ECF No. 69-5 at) ("Mr. Telep was told several times to stop resisting and allow himself to be handcuffed and he refused and continued to resist."). Plaintiff, however,

maintains he did not resist, but could not comply with the officers demands to "give [them his] hands" because his body tensed after being tased. (ECF No. 73-1 at 46).

Additionally, while the deputies' arguments for summary judgment on Count II are predicated solely on their use of force in seizing Plaintiff, Plaintiff alleges that after he was tackled and tased the deputies and Rising Sun officers proceeded to punch and kick him. (ECF No. 73-1 at 46). Plaintiff's account is corroborated by his wife's deposition testimony. (ECF No. 73-11 at 33) ("I see them throwing elbows, punching him in the sides. I see them kicking and kneeing him in the sides."). In their Reply brief, Defendants Dowling and Thomas dispute that they punched or kicked Plaintiff, and no account of hitting or kicking Plaintiff is included in their supplemental police reports or referenced in their affidavits. (ECF No. 76 at 2-3).[8] The Fourth Circuit has "made clear that the justification for using protective force expires at the very moment a threat is neutralized." *Dean v. Jones*, 984 F.3d 295, 305 (4th Cir. 2021). Thus, once Plaintiff was subdued the deputies "no longer had reason to fear for officer or public safety" and the "use of force became unnecessary and unjustified." *Id.*; *see also Harris v. Pittman*, 927 F.3d 266, 274 (4th Cir. 2019) ("[T]he reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds.") (citation and internal quotation marks omitted). If Plaintiff's version of events were credited by a factfinder, the second and third *Graham* factors would undoubtedly weigh in his favor. Thus, because there are genuine disputes of fact material to the extent to which Plaintiff posed a threat to the safety of others and the extent to which he

---

[8] Defendants argue allegations of kicking and punching Plaintiff are unreliable and uncorroborated. (ECF No. 76 at 2). Credibility determinations of this kind are inappropriate at the summary judgment stage. *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 264 (D. Md. 2023) ("[I]n considering a summary judgment motion, the court may not make credibility determinations."). Additionally, the Court notes that Plaintiff's account is corroborated by his wife's deposition testimony. (ECF No. 73-11 at 9).

resisted arrest, the Court is unable to conclude that Plaintiff's seizure was objectively reasonable as a matter of law.

In sum, the parties' conflicting accounts do not warrant entering summary judgment on this issue, particularly considering that the first *Graham* factor undoubtedly weighs in Plaintiff's favor and in light of the Court's obligation to view the facts and draw reasonable inferences in the light most favorable to Plaintiff. *Iko*, 535 F.3d at 230 (citation omitted). Summary judgment on Count II shall be denied.

### iii. Defendants Dowling and Thomas are not entitled to qualified immunity.

Defendants Dowling and Thomas argue they are entitled to qualified immunity and should therefore be granted summary judgment on Counts I and II as a matter of law. (ECF No. 69-1 a 11). "Qualified immunity protects all governmental officials except those who violate a 'statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *Smith v. Murphy*, 634 F. App'x 914, 916 (4th Cir. 2015) (quoting *Carroll v. Carman*, 574 U.S. 13, 16 (2014)). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll*, 574 U.S. at 16 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Courts apply a two-step test in determining whether a police officer is entitled to qualified immunity, inquiring, first, whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right, and second, if the first prong is satisfied, whether the right at issue was clearly established at the time of the officer's conduct." *Dorsey*, 381 F. Supp. 3d at 530 (internal quotations omitted). "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, the court generally adopts 'the plaintiff's version of the facts.'" *Id.* (quoting *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011)). "Only one of

13

the questions has to be resolved in favor of the defendant" for qualified immunity to apply. *Moore v. Peitzmeier*, No. CV TDC-18-2151, 2020 WL 94467, at *10 (D. Md. Jan. 7, 2020). "Accordingly, even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)); *see also Swagler v. Sheridan*, 837 F. Supp. 2d 509, 534–35 (D. Md. 2011).

The Court has already explained that there are genuine disputes of material fact as to whether Defendants Dowling and Thomas violated Plaintiff's Fourth Amendment rights to be free from unlawful seizure and/or excessive force, and that, in the light most favorable to Plaintiff, Plaintiff's version could establish such violations if proven. The Court will therefore turn to the second prong of the qualified immunity analysis.[9] "A right is clearly established if it would be clear to a reasonable officer that the alleged conduct is unlawful." *Dorsey*, 381 F. Supp. 3d at 533. "To determine whether a right is clearly established, we assess whether the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." *Id.* Although a "case directly on point for a right to be clearly established" is not necessary to deny an officer qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." *Id.* (internal quotations omitted). "Specificity is especially

---

[9] The undersigned previously held Officer McKinney was not entitled to qualified immunity in deciding McKinney's Motion for Summary Judgment, which necessarily included a determination that the Constitutional rights Plaintiff alleges were violated were clearly established law. (ECF No. 49). This opinion incorporates much of the same authority and analysis.

important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.*; *see also Schultz*, 290 F. Supp. 2d at 648 ("Thus, qualified immunity protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines.") (internal quotations omitted).

Defendants Dowling and Thomas emphasize these principles of specificity in their motion and contend there is "no precedent in the Fourth Circuit that would have instructed the deputies that it would be an unreasonable and excessive use of force to grab and take to the ground an individual engaged in [] threatening assaultive behavior toward a pregnant bride." (ECF No. 69-1 at 14). This is far too narrow an interpretation of what is required to demonstrate clearly established law. *Dean for and on behalf of Harkness v. McKinney*, 976 F.3d 407, 417 (4th Cir. 2020) ("[T]he absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."). The Court may determine that a right is clearly established absent case law with identical facts, and such a finding in this matter certainly does not require precedent specifically involving an assault on a pregnant bride. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Although earlier cases involving 'fundamentally similar' facts can provide strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.").

Regarding Plaintiff's testimony that he was tackled by Deputies Dowling and Thomas when approaching Ms. Miller in a non-aggressive manner, Fourth Circuit precedent clearly establishes "that a police officer's tackling to the ground a non-threatening, nonresisting, misdemeanor suspect violates the Fourth Amendment." *Higginbotham v. Brauer*, No. DKC 18-1067, 2020 WL 4569520, at * (D. Md. Aug. 7, 2020) (citing *Kane v. Hargis*, 987 F.2d 1005, 1008

(4th Cir. 1993)); *see also Barfield v. Kershaw Cnty. Sheriff's Off.*, 638 F. App'x 196, 203 (4th Cir. 2016) ("Although there is not a case directly on all fours with the facts of this case, the law at the time of [the officer's] conduct makes clear that in November 2011, a police officer's unprovoked tackling of a nonthreatening, nonresisting misdemeanor suspect to effect his arrest violates the Fourth Amendment."). As for Plaintiff's allegations that Defendants Dowling and Thomas kicked and punched after he was subdued, "there is controlling precedent holding that assaulting an unarmed, subdued suspect or arrestee violates the Fourth Amendment." *Moore*, 2020 WL 94467, at *11. As the Court explained in its May 5, 2024 Memorandum Opinion and Order denying Defendant McKinney's Motion for Summary Judgment:

> [T]he Fourth Circuit concluded in *Kane v. Hargis* that a police officer's decision to exert additional physical force on an already secured, unarmed citizen that no longer posed any potential threat violated that citizen's Fourth Amendment rights. 987 F.2d 1005, 1008 (4th Cir. 1993). The Fourth Circuit likewise explained in *Jones v. Buchanan* how police officers violated an individual's Fourth Amendment rights when they used unnecessary additional force against an already subdued individual "who posed no threat to the officer or others and had neither committed, nor was suspected of committing, any crime." 325 F.3d 520, 534 (4th Cir. 2003). To be clear, the alleged excessive force in both cases was more severe than what Plaintiff faults Defendant McKinney for. However, both cases nevertheless make clear that an officer's additional use of unnecessary force against an already subdued, unarmed individual constitutes a clear Fourth Amendment violation. The Fourth Circuit in Jones also provided several citations to cases in other Circuits in which officers were denied qualified immunity for exerting unnecessary, additional force against an already neutralized individual, even where the individual suffered no serious or permanent injury. See *id.* at 533–34 (collecting cases); *Smith*, 634 F. App'x at 617–18 (explaining in the context of whether an officer is entitled to qualified immunity for alleged Fourth Amendment excessive force violations that there is no support for the proposition that "suffering only de minimis injuries bars one from asserting a Fourth Amendment excessive force claim").

(ECF No. 49 at 17). Keeping these principles in mind and adopting Plaintiff's version of events, the undersigned concludes that the rights at issue were clearly established at the time of the relevant

conduct. Accordingly, the Court cannot hold as a matter of law that Defendants Dowling and Thomas are entitled to qualified immunity as to Counts I and II.

### b. State Constitutional Claims: Article 26 unlawful seizure and excessive force claims (Counts VI and VIII)

The parties correctly identify that "state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to … Fourth Amendment claim[s]. *Miller v. Prince George's Cnty.*, 475 F.3d 621, 631 n.5 (4th Cir. 2007); *Smith v. Bortner*, 998 A.2d 369, 380 (Md. Ct. Spec. App. 2010). Thus, the Court declines to grant summary judgment on Counts VI and VIII given that there exist genuine disputes of material fact as to whether Defendants Dowling and Thomas violated Plaintiff's Fourth Amendment Rights. *See supra* Sec. III(a).

### c. Common law claims: Battery (Count X), false arrest (Count XI), and false imprisonment (Count XII)

Defendants Dowling and Thomas maintain Plaintiff's battery claim fails as a matter of law because their use of force against Plaintiff was reasonable under the circumstances. (ECF No. 69-1 at 16). As explained in the Court's prior summary judgment opinion, "the principle of reasonableness announced in *Graham* is the appropriate one to apply to excessive force claims brought under Article 26 and for common law claims of battery in an excessive force suit." *Randall v. Peaco*, 175 Md. App. 320, 332 (2007); (ECF No. 49). The Court's conclusion that genuine disputes of material fact exist regarding the merits of Plaintiff's unlawful seizure and excessive force claims therefore also preclude summary judgment on the merits of Plaintiff's battery claim.

Finally, the deputies contend they should be granted summary judgment on Plaintiff's false arrest and false imprisonment claims because their seizure of Plaintiff was legally justified. (ECF

No. 69-1 at 16). "Under Maryland common law, false arrest and false imprisonment are intentional torts." *Dett v. State*, 161 Md. App. 429, 441 (2005). "The torts are separate causes of action that share the same elements . . . 1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal justification." *Id.* (internal quotations omitted). "[A] police officer carrying out either an arrest under warrant or a warrantless arrest is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances." *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995). The critical inquiry, just as it was for Plaintiff's unlawful seizure claims, is whether Defendants Dowling and Thomas acted without legal justification. The Court has already determined that genuine disputes of material fact preclude summary judgment on this issue. Defendants' motion as to Counts X, XI, and XII will therefore be denied.

### d. Defendants Dowling and Thomas are not entitled to immunity under the Maryland Tort Claims Act.

Defendants Dowling and Thomas next maintain they are entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA"). "[G]enerally[,] under common law, the State enjoys sovereign immunity and is thus protected from suit for both ordinary torts and State constitutional torts. The State, however, has partially waived this immunity by statute." *Cooper v. Rodriguez*, 118 A.3d 829, 844-45 (Md. 2015) (quoting *Ford v. Balt. City Sheriff's Off.*, 814 A.2d 127, 133 (2002)). Pertinent here, the MTCA provides: "State personnel shall have immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article." Md. Code Ann., State Gov't § 12-105. Under § 5-522(b), state personnel are immune "from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence[.]" Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). Defendants Dowling and Thomas argue there are no facts suggesting they acted with malice or

gross negligence because the detention of Plaintiff and accompanying force was reasonable under the circumstances, and they are accordingly immune under the MTCA as a matter of law. The Court does not agree.

For purposes of the MTCA, Maryland courts apply a standard of "actual malice," which "normally refers 'to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud…" *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (quoting *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999)); *see also Barbe v. Pope*, 935 A.2d 699, 714 (Md. 2007) ("In cases involving allegations of malice we have said that well-pled facts showing 'ill-will' or 'evil or wrongful motive' are sufficient to take a claim outside the immunity and non-liability provisions of the MTCA.") (citations omitted). Gross negligence is viewed "as something *more* than simple negligence, and likely more akin to reckless conduct," and has been described as:

> [A]n intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre*, 863 A.2d at 717 (first quoting *Taylor v. Harford Cnty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004) (emphasis in original); and then quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). Gross negligence is evaluated on the facts and circumstances of each case, and is generally a question reserved for the factfinder unless reasonable people "could not differ as to the rational conclusion to be reached." *Cooper*, 118 A.3d at 846 (quoting *Romanesk v. Rose*, 237 A.2d 12, 14 (1968)). Thus, "[u]nless the facts are so clear as a matter of law, it is for

the trier of fact to determine whether a defendant's negligent conduct amounts to gross negligence." *Id.* (quoting *Taylor*, 862 A.2d at 1034).

As has been discussed extensively, there are genuine disputes of material fact regarding whether Defendants Dowling and Thomas had a reasonable basis to tackle Plaintiff, as well as whether they kicked and punched him once he was subdued and on the ground. If a factfinder credited Plaintiff's account of events, it could reasonably be inferred that the deputies were motivated by an intent to injure Plaintiff, or at least that they acted with indifference to his rights. *See Okwa v. Harper*, 757 A.2d 118, 127-29 (Md. 2000) (holding a reasonable factfinder could determine officers acted with malice, where it was disputed whether nonresisting Plaintiff was "forcibly put to the ground" and struck "in the head and neck" by arresting officers); *Lee*, 863 A.2d at 310 ("Wrestling another to the ground, pulling his hair, and hitting him on the case, again without cause or provocation, is certainly malicious conduct."). On this record, the Court cannot conclude that Defendants Dowling and Thomas are immune under the MTCA as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Dowling and Thomas (ECF No. 69) is DENIED.

Date: June 12, 2025

                                                /s/
                                      J. Mark Coulson
                                      United States Magistrate Judge